## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PLUMBERS LOCAL UNION NO. 690 HEALTH PLAN, individually and on behalf of all others similarly situated, | : | |
| | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 16-0665 |
| | : | |
| ACTAVIS INC., et al. | : | ORAL ARGUMENT REQUESTED |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM IN SUPPORT OF
## <u>DEFENDANTS' JOINT MOTION TO DISMISS</u>

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 3

    A.    Plumbers's Allegations Regarding Prescription Drug Reimbursement.................. 3
    B.    Plumbers Raised Nearly Identical Allegations in Prior Litigation ........................ 4
        1.    Plumbers Joined the New Jersey AWP Litigation in 2008........................ 5
        2.    The Amended Complaint in This Case Mirrors the 2003 New Jersey AWP Complaint.................................................................. 6
    C.    Plumbers Settled Claims Based on Nearly Identical Allegations.......................... 7

ARGUMENT ............................................................................................................ 9

I.    Plumbers's Knowledge of the Alleged Falsity of Benchmarks Labeled "AWP" Bars All Pennsylvania State Law Claims for Payments Made, at a Minimum, on or After July 9, 2008 ......................................................................................... 9

II.    Plumbers's Pennsylvania State Law Claims for Payments Made Before December 30, 2009 Are Barred by the Applicable Statutes of Limitations ....................... 10

    A.    Plumbers's Claims for Payments Made Before December 30, 2009 Are Time-Barred................................................................................ 10
    B.    Plumbers Cannot Toll the Applicable Limitations Periods by Pleading Fraudulent Concealment............................................................. 11

III.    Plumbers Fails to State a Claim on Which Relief Can Be Granted Under Pennsylvania Law ............................................................................................ 15

    A.    Plumbers Fails to Adequately Plead an AWP Claim............................................ 17
    B.    Plumbers Does Not and Cannot Plausibly Plead Reliance and Causation .......... 20
    C.    Plumbers's Claims Fail on Additional Grounds ................................................. 23
        1.    Plumbers's UTPCPL Claim Is Inadequately Pled ..................................... 23
        2.    Plumbers Fails to State a Claim for Fraud ................................................. 26
        3.    Plumbers Fails to State a Claim for "Negligent Misrepresentation" ........ 27
        4.    The Failure of Plumbers's UTPCPL and Fraud Claims Is Fatal to Its Other Claims ................................................................................ 28
        5.    Plumbers Fails to State a Claim for Unjust Enrichment ........................... 29
        6.    Plumbers's Failure to Allege an Unlawful Agreement Among Defendants Is Fatal to Its Civil Conspiracy Claim ................................... 30

IV.    Plumbers's Tacked-On Claims Under Other States' and Territories' Consumer Protection Laws Fail ......................................................................................... 31

    A.    Plumbers Lacks Standing to Assert Claims Under the Laws of States and Territories in Which It Neither Resides Nor Suffered an Injury .......................... 32
    B.    Plubers's Undifferentiated Pleading of Count III Is Insufficient........................ 35

Page

C.      Plumbers's Claims Under the Consumer Protection Laws of Other States
        and Territories Fail...................................................................................... 36

D.      Plumbers's Consumer Protection Claims for Other States Are Barred by
        Applicable Statutes of Limitations.......................................................... 39

V.      Plumbers's "Fail Safe" Class Should Be Dismissed....................................... 40

CONCLUSION...................................................................................................... 43

## TABLE OF AUTHORITIES

### CASES                                                    PAGE(S)

*Adams v. Teamsters Local 115*, 214 F. App'x 167 (3d Cir. 2007) ................................................30

*Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437 (D.N.J. 2009) ..............................................41

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..................................................................33

*Andress v. Nationstar Mortg., LLC*, No. 15-1779, 2015 U.S. Dist. LEXIS 133689
  (E.D. Pa. Sept. 30, 2015) ..............................................................................................................23

*Arndt v. Johnson & Johnson*, 67 F. Supp. 3d 673, 682 (E.D. Pa. 2014) ................................11, 13

*Arnold v. Microsoft Corp.*, 2000 WL 36114007 (Ky. Cir. Ct. 2000) ...........................................36

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................15, 16

*AstraZeneca LP v. State*, 41 So. 3d 15 (Ala. 2009) ......................................................................22

*Atl. Pier Assocs., LLC v. Boardakan Rest. Partners, L.P.*, No. 08-4564, 2011 U.S.
  Dist. LEXIS 83414 (E.D. Pa. July 29, 2011) ...........................................................................12

*Austin v. Hill*, No. 11–2847, 2014 WL 1386338 (E.D. Pa. Apr. 8, 2014) ....................................28

*Bauer v. Dean Morris, L.L.P*, Civ. A. No. 08-5014, 2011 WL 3924963 (E.D. La.
  Sept. 7, 2011) ..............................................................................................................................41

*Baumgart v. Keene Bldg. Prods. Corp.*, 633 A.2d 1189 (Pa. Super. Ct. 1993)............................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................................15

*Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, 2015 WL
  401443 (W.D. Pa. Jan. 28, 2015).................................................................................................40

*Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A. 3d 145 (Pa.
  Super. Ct. 2012) ..........................................................................................................................25

*Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015) .................................41

*Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158 (N.D. Cal. 2008)..........................................................41

*Bret Binder v. Weststar Mortg., Inc.*, No. CV 14-7073, 2016 WL 3762710 (E.D.
  Pa. July 13, 2016)..........................................................................................................................9

*Christidis v. First Pa. Mort. Trust*, 717 F.2d 96 (3d Cir. 1983) .....................................................9

*Colarossi v. Schmid Lab.*, 830 F. Supp. 230 (D.N.J. 1993) ............................................13

*Commonwealth v. Percudani*, 844 A.2d 35 (Pa. Commw. Ct. 2004) ...........................................24

*Commonwealth v. TAP Pharm. Prods.*, 94 A.3d 350 (Pa. 2014) ............................................2, 19

*Corporate Aviation Concepts, Inc. v Multi-Serv. Aviation, Corp.*, Civ. A. No. 03-3020, 2005 WL 1693931 (E.D. Pa. July 19, 2005) ...............................................29

*Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158 (3d Cir. 2014) ..............................................10

*Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788 (D. Md. 2013) ......................................39

*David v. Grusemeyer*, 996 F.2d 617 (3d Cir. 1993) ......................................12

*Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827 (S.D. Ohio 2003) ..........................................38

*Delaware Valley Health Care Coalition v. Actavis Grp.*, No. 00806...........................................31

*Dolan v. PHL Variable Ins. Co.*, 3:15-cv-01987, 2016 U.S. Dist. LEXIS 161414 (M.D. Pa. Nov. 22, 2016)................................................................16, 17

*Drelles v. Mfrs. Life Ins. Co.*, 881 A.2d 822 (Pa. Super. 2005)...........................................10

*EEOC v. Fedex Ground Package Sys., Inc.*, 158 F. Supp. 3d 393, 397 (W.D. Pa. 2016) .......................................................................40

*Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089 (9th Cir. 2015)......................................27

*Emery v. Third Nat'l Bank of Pittsburgh*, 162 A. 281 (Pa. 1932) .................................20

*Falat v. County of Hunterdon*, Civ. A. No. 12-6804, 2013 U.S. Dist. LEXIS 37398 (D.N.J. March 19, 2013) ..............................................19

*Fine v. Checcio*, 870 A.2d 850 (Pa. 2004)...........................................12, 14, 15

*Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Servs.*, No. 08–2926, 2010 WL 2470992 (E.D. Pa. June 14, 2010) ........................................28

*Ford Motor Credit Co. v. Ryan*, 939 N.E.2d 891 (Ohio Ct. App. 2010)......................................38

*Ford v. ChartOne, Inc.*, 908 A.2d 72 (D.C. 2006)......................................38

*Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D. Pa. 1995) .................................41

*Gabriel v. O'Hara*, 534 A.2d 488 (Pa. Super. 1987)...........................................23, 24

*Gibbs v. Ernst*, 647 A.2d 882 (Pa. 1994) ......................................27

*GMH Assocs., Inc. v. Prudential Realty Grp.*, 752 A.2d 889 (Pa. Super. Ct. 2000) ...................27

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010) ...................................................................................................30

*Grey v. Johansson*, Civ. A. No. 15-2479, 2016 WL 1613804 (E.D. Pa. Apr. 22, 2016) ...................................................................................................26

*Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013).......................................41

*Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364 (D.N.J. 2004)........................................21

*Hunt v. U. S. Tobacco Co.*, 538 F.3d 217 (3d Cir. 2008) ...........................................20

*In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. 150 (E.D. Pa. 2015) ...............................11

*In re Actos End Payor Antitrust Litig.*, No. 13-CV-9244, 2015 WL 5610752 (S.D.N.Y. Sept. 22, 2015)...................................................................35

*In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544 (E.D. Pa. 2007) ...................38

*In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y 2011) ...................................35

*In re Ford Tailgate Litig.*, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ...................................37

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525 (E.D. Mo. 1997) ...................................................................................35

*In re Generic Drug Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.) .......................................31

*In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314 (3d Cir. 2002) ........................................15

*In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015) ............................................42

*In re Processed Egg Prods. Antitrust Litig.*, 08-md-02002, 2011 WL 5980001 (E.D. Pa. Nov. 30, 2011)...................................................................13, 14

*In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319 (S.D.N.Y. 2005) .....................................38

*In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198 (3d Cir. 2002) ........................................17

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012)...................................................................33

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 692 (E.D. Pa. 2014) ...................................................33

*In re Thorne's Estate*, 25 A.2d 811 (Pa. 1942)...........................................................9

*In re Tobacco Cases II*, 46 Cal. 4th 298 (2009)................................................................39

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009).....................................33, 34

*In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670 (E.D. Pa. 2010) ..................................36

*Int'l Union of Operating Eng'rs, Local No. 68 Welfare Fund v. AstraZeneca PLC*,
    Docket No. A-0605-08T2, slip. op. (N.J. Super. Ct. App. Div., May 1, 2009).......................5

*Int'l Union of Operating Engineers, Local No. 68 Welfare Fund v. AstraZeneca*,
    No. MON-L 3136-06 (N.J. Super. Ct. Law Div. Aug. 16, 2010) ................................6

*Japhet v. Francis E. Parker Mem'l Home, Inc.*, Civ. A. No. 14-01206, 2014 U.S.
    Dist. LEXIS 105134 (D.N.J. July 31, 2014) ................................................19, 20

*Kemezis v. Matthew*, CIV. A. No. 07-5086, 2008 WL 5191587 (E.D. Pa. Dec. 10,
    2008), *aff'd sub nom. Kemezis v. Matthews*, 394 F. App'x 956 (3d Cir. 2010) ....................16

*Kern v. Lehigh Valley Hosp.*, 108 A.3d 1281 (Pa. Super. Ct. 2015) ..............................20

*Kingston Coal Co. v. Felton Mining Co.*, 690 A.2d 284 (Pa. Super. Ct. 1997)........................11

*Kline v. Sec. Guards, Inc.*, 196 F.R.D. 261 (E.D. Pa. 2000).......................................41

*Kondratick v. Beneficial Consumer Discount Co.*, No. 04-4895, 2006 WL 305399
    (E.D. Pa. Feb. 8, 2006)................................................................42

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1999) ................................................34

*Langdon v. Google, Inc.*, 474 F. Supp. 2d 622 (D. Del. 2007)....................................38

*Lewis v. Casey*, 518 U.S. 343 (1996)........................................................32

*Loftus v. SEPTA*, 843 F. Supp. 981 (E.D. Pa. 1994)............................................30

*Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 880 (N.D. Ill. 2014) .................................41

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004) .............................................16

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ...................................41

*Massachusetts v. E.P.A.*, 549 U.S. 497 (2005) ................................................34

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ..................................37

*McCalley v. Samsung Elects. Am., Inc.*, Civ. No. 07-2141, 2008 WL 878402
    (D.N.J. Mar. 31, 2008)...............................................................34, 35

*Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802 (7th Cir. 2012)....................................40

*Mincy v. Klem*, No. 1:08-cv-0066, 2011 U.S. Dist. LEXIS 23009 (M.D. Pa. Mar. 8, 2011) ............................................................................................................30

*Mitchell v. Moore*, 729 A.2d 1200 (Pa. 1999) ..............................................28

*Molineaux v. Reed*, 532 A.2d 792 (Pa. 1987) .................................................11

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)......................41

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ...........................................33

*Petula v. Mellody*, 588 A.2d 103 (Pa. Commw. Ct. 1991) ............................31

*Philadelphia v. Lead Indus. Ass'n*, Civ. A. No. 90-7064, 1992 U.S. Dist. LEXIS 5849 (E.D. Pa. Apr. 23, 1992) ............................................................20

*Phillips v. Selig*, 959 A.2d 420 (Pa. Super. Ct. 2008)............................29, 30

*Plumbers's Local Union No. 690 v. Sanofi, S.A.*, No. 15-cv-956 (KM) (MAH), 2016 U.S. Dist. LEXIS 62673 (D.N.J. May 11, 2016) ............................16

*Porreco v. Porreco*, 811 A.2d 566 (Pa. 2002) ................................................21

*Price v. Ind. Fed. Savings Bank*, 110 A.3d 567 (D.C. 2015).........................38

*Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D.N.Y. 2007) ....................21

*Rodi v. S. New England Sch. of Law*, 389 F.3d 5 (1st Cir. 2004) ...................36

*S. Cross. Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410 (3d Cir. 1999)...............................................................................5

*Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014) ............................................................................................41

*Scaife Co. v. Rockwell-Standard Corp.*, 285 A.2d 451 (Pa. 1971)................20

*Scott v. Bimbo Bakeries, Inc.*, No. 10-3154, 2012 WL 645905 (E.D. Pa. Feb. 29, 2012) ...................................................................................................27

*Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451 (E.D. Pa. 2009)......................24

*Shelton v. Bledsoe*, 775 F.3d 554 (3d Cir. 2015) ..........................................40

*Silverstein v. Percudani,* 422 F. Supp. 2d 468 (M.D. Pa. 2006).....................16

*Simonet v. Smithkline Beecham Corp.*, 506 F. Supp. 2d 77 (D.P.R. 2007) ...................35

*Slaybaugh v. Newman*, 479 A.2d 517 (Pa. Super. Ct. 1984) .........................30

Page

*Spacesaver Corp. v. The Marvel Grp., Inc.*, 621 F. Supp. 2d 659 (D. Wis. 2009) ........................ 39

*Stanley v Huntington Nat'l Bank*, 492 F. App'x 456 (4th Cir. 2012) ............................................ 36

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999) ........................................................................................................... 28

*Stewart v. Evans,* 3:CV-09-1428, 2009 U.S. Dist. LEXIS 75969 (M.D. Pa. Aug. 25, 2009) .............................................................................................................................. 19

*Sunshine v. Reassure Am. Life Ins. Co.*, No. 10-1030, 2012 U.S. Dist. LEXIS 30441 (E.D. Pa. March 6, 2012) ...................................................................................... 17

*Taggart v. Wells Fargo Home Mortg., Inc.*, 563 F. App'x 889 (3d Cir. 2014) ................ 16, 25, 26

*Teamsters Local 237 Welfare Fund v. AstraZeneca Pharms. LP,* No. 415,2015, 2016 Del. LEXIS 236 (Del. Apr. 12, 2016) ............................................................................ 21

*Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82 (3d Cir. 2015) .............................. 16, 26

*U.S. ex rel. Krahling v. Merck & Co., Inc.*, 44 F. Supp. 3d 581, 600 (E.D. Pa. 2014) ...................................................................................................................................... 33

*U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227 (3d Cir. 1998) ...................................................................................................................................... 16

*U.S. ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125 (E.D. Pa. 2012) .......................... 5

*U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295 (3d Cir. 2011) ............................ 16

*Wark v. DePuy, Inc.*, No. 95-C-684, 1995 WL 382964 (N.D. Ill. June 22, 1995) ........................ 13

*Weisblatt v. Minnesota Mut. Life Ins. Co.*, 4 F. Supp. 2d 371 (E.D. Pa. 1998) ............................ 25

*Wenglicki v. Tribeca Lending Corp.*, 07-cv-4522, 2009 WL 2195221 (E.D. Pa. July 22, 2009) .............................................................................................................................. 23

*White v. PNC Fin. Servs. Grp., Inc.*, No. CIV. A. 11-7928, 2013 WL 3090823 (E.D. Pa. June 20, 2013) .............................................................................................................. 14

*Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007) ........................................................ 33

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) .............................................. 42

*Zarichny v. Complete Payment Recovery Servs.*, 80 F. Supp. 3d 610, 625 (E.D. Pa. 2015) .............................................................................................................. 40, 42, 43

## STATUTES AND RULES[1]

42 Pa. Cons. Stat. § 5524(7) ...................................................................................11

Ala. Code § 8-19-14 ..............................................................................................39

Ark. Code Ann. § 4-88-115 ....................................................................................39

Cal. Bus. & Prof. Code § 17208 .............................................................................39

Colo. Rev. Stat. § 6-1-115 ......................................................................................39

Conn. Gen. Stat. § 42-110g(f) ................................................................................39

D.C. Code § 12-301(8) ...........................................................................................39

Ga. Code Ann. § 10-1-401 ......................................................................................39

Haw. Rev. Stat. § 480-24 ........................................................................................39

Idaho Code § 48-619 ..............................................................................................39

Ill. Comp. Stat. § 505/10a(3)(e) .............................................................................39

Ind. Code § 24-5-0.5-5 ......................................................................................36, 39

Iowa Code Ann. § 714H.5(5) ..................................................................................39

Ky. Rev. Stat. Ann. 367.220(5) ..............................................................................39

La. Stat. Ann. § 51:1409(E) ....................................................................................39

Mass. Gen. Laws Chapter 93A, § 9(3) ...................................................................36

Mass. Gen. Laws Chapter 93A, § 11 ......................................................................38

Mass. Gen. Laws Chapter 260, § 5A ......................................................................39

Mich. Comp. Laws § 445.911(7) ............................................................................39

N.C. Gen. Stat. § 75-16.2 .......................................................................................39

N.H. Rev. Stat. Ann. § 358-A:3(IV-a) ....................................................................39

N.Y. Gen. Bus. Law § 349 .....................................................................................38

Neb. Rev. Stat. § 59-1612 .......................................................................................39

---

[1] State consumer protection statutes are additionally referenced in Table A herein.

Page

Or. Rev. Stat. § 646.638(6) .................................................................39

Pa. Stat. § 201-2(4) ...............................................................23, 24, 25

Pa. Stat. § 201-9.2(a) .............................................................................20

S.C. Code Ann. § 39-5-150 .................................................................39

S.D. Codified Laws § 37-24-33 ..........................................................39

Tenn. Code § 47-18-110 ......................................................................39

Tex. Bus. & Com. Code Ann. § 17.565 ..............................................39

Utah Code Ann. § 13-11-19(8) ...........................................................39

Va. Code Ann. § 59.1-204.1(A) ...........................................................39

W. Va. Code § 46A-6-106(c) ...............................................................36

Wash. Rev. Code § 19.86.120 .............................................................39

Wis. Stat. § 100.18 ..........................................................................38, 39

Wyo. Stat. Ann. § 40-12-109 ..............................................................39

## MISCELLANEOUS

Federal Rule of Civil Procedure 8 .......................................................19

Federal Rule of Civil Procedure 9(b) ........................................... passim

Federal Rule of Civil Procedure 16 .......................................................3

Federal Rule of Civil Procedure 23 .................................................40, 42

## PRELIMINARY STATEMENT

Plaintiff Plumbers Local Union No. 690 Health Plan's ("Plaintiff" or "Plumbers")

Amended Complaint[2] must be dismissed in its entirety.  Plumbers, a Taft Hartley trust fund that

provides prescription drug benefits to its members, alleges that for decades it has been defrauded

into overpaying for generic drugs because its payments were based on benchmarks labeled

"Average Wholesale Price" or "AWP".  The gravamen of Plumbers's claim is that Defendants

reported benchmarks labeled "AWP" that were higher than the actual average market prices of

their generic drugs.  Yet Plumbers knew exactly what it alleges here by, at the latest, July 2008,

when Plumbers agreed to act as a class representative in a New Jersey case based on the same

claims and allegations.

Plumbers's prior allegations preclude any assertion that it justifiably relied on

benchmarks labeled "AWP" as actual average market prices, and its knowledge requires

dismissal of all claims based on payments made in or after July 2008.  *See infra* at 19-21.

Moreover, because Plumbers did not commence this action until December 30, 2015, the

applicable statutes of limitations bar claims based on payments made before December 30, 2009,

because the longest possible statute of limitations for Plumbers's claims is six years.  Those

claims are not saved by Plumbers's conclusory effort to plead fraudulent concealment to toll the

limitations periods, because Plumbers's own litigation history evinces its awareness of the

conduct giving rise to the allegations in the Amended Complaint by at least July 2008.  Further,

it has long been a matter of public knowledge that benchmarks labeled "AWP" do not represent

averages of prices actually paid for prescription drugs.  Indeed, the Pennsylvania Supreme Court

stated that "[b]y 1991, there was a wealth of information available to state officials and the

---

[2] Amended Complaint, *Plumbers Local Union No. 690 Health Plan v. Actavis Inc.*, No. 16-cv-00665-AB (March 29, 2016) (ECF No. 53).

public at large confirming that AWPs served as a 'list' or 'book' price." *Commonwealth v. TAP Pharm. Prods.,* 94 A.3d 350, 353 (Pa. 2014). Plumbers was fully aware and clearly on "notice" of its claims long ago and the public record refutes Plumbers's claimed ignorance of the facts underlying its allegations. Its fleeting attempt to plead "fraudulent concealment" is unavailing. *See infra* at 11-14. These reasons alone are entirely dispositive of Plumbers's claims, which must be dismissed with prejudice in their entirety.

The Amended Complaint is fundamentally defective and must be dismissed for other reasons as well. As a threshold matter, Plumbers's knowledge regarding benchmarks labeled "AWP" precludes its ability to establish the justifiable reliance required for its fraud-based claims. Moreover, because each of Plumbers's claims is fraud-based, Plumbers must satisfy the heightened pleading requirements of Rule 9(b). But Plumbers fails to plead even at a general level how it was injured by its use of benchmarks labeled "AWP", falling short of the specificity the Rule requires. Among other deficiencies, while Plumbers claims that benchmarks labeled "AWP" play some unidentified role in determining the price it pays as reimbursement to providers for drugs prescribed to its participants, Plumbers does not allege what formula it used to calculate its reimbursement for Defendants' generic drugs. Plumbers even fails to allege what it actually paid for Defendants' generic drugs, let alone how much Plumbers "overpaid" or why the use of benchmarks labeled "AWP" caused any alleged "overpayment." *See infra* at 16-18, 22-23.

Finally, Plumbers tacks on consumer protection claims (Counts II and III) under the laws of 48 states and two territories (collectively the "Other State Law Claims") on behalf of a purported class of "all natural persons and third party payors nationwide" who paid for generic drugs "based on AWPs that were inflated." Am. Compl. ¶ 441. But Plumbers, a Pennsylvania

plaintiff, lacks standing to maintain claims under other states' laws and fails to plead the elements required to maintain those claims. *See infra* at 32-34. Moreover, putting aside the multiple problems with Plumbers's sweeping class definition—from legal variations across state laws to individualized issues impacting each class member to the intractable impediments standing in the way of fairly adjudicating such a proceeding—the class claims fail at the outset. Courts consistently reject proposed classes when there is no reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. And it is well settled that there is no reliable and administratively feasible mechanism for determining membership in a "fail-safe" class—that is, one defined so that class membership depends on the merits of putative class members' claims. Because no amount of discovery can remedy this deficiency, the class allegations should be dismissed. *See infra* at 40-42.

Accordingly, the Amended Complaint should be dismissed with prejudice in its entirety.

## FACTUAL BACKGROUND[3]

### A.    Plumbers's Allegations Regarding Prescription Drug Reimbursement

Plumbers provides a health insurance plan—including coverage for prescription drugs— to members of the Plumbers's Local 690 union. *See, e.g.*, Am. Compl. ¶ 157. Like other insurers, Plumbers reimburses retail pharmacies for all or part of the cost of prescription drugs dispensed to its members. In a typical transaction, an insured patient visits a pharmacy with a prescription issued by a doctor. Assuming insurance coverage is in place for the prescribed drug, the pharmacist dispenses the drug to the patient and the pharmacy receives in return an amount determined by contract with the insurer or, in many cases, a pharmacy benefit manager ("PBM")

---

[3] For purposes of this motion to dismiss only, Defendants accept the factual allegations as pled in the Amended Complaint, but reserve all rights to dispute such allegations.

like that used by Plumbers.[4]  Part of that rate may be paid by the consumer through a small

copayment.  *See generally* Am. Compl. ¶¶ 167-169.

      Insurers like Plumbers (sometimes referred to as "third party payors") reimburse covered

prescription drugs based on a variety of reimbursement formulas, some of which may be based

on benchmarks labeled "AWP".[5]  In its Amended Complaint, Plumbers contends that Defendants

committed fraud because Defendants reported benchmarks labeled "AWP" that exceeded the

average prices paid by pharmacies and other providers.  *See, e.g.*, Am. Compl. ¶ 206.  Without

citing any basis or explaining why, Plumbers claims that AWPs "should have been calculated"

based on "actual transactional price data—the amounts charged to medical providers and others

for their drugs."  *See* Am. Compl. ¶ 183.  According to Plumbers, Defendants "manipulated" and

"inflated" AWPs by failing to include discounts, rebates, free goods, and other financial

incentives.  Am. Compl. ¶ 196.[6]

### B.      <u>Plumbers Raised Nearly Identical Allegations in Prior Litigation</u>

      In the Amended Complaint, Plumbers makes allegations regarding a lawsuit filed by the

Commonwealth of Pennsylvania in 2004 claiming that the reporting of "inflated" AWPs and

marketing of "spreads" violated Pennsylvania law.  Am. Compl. ¶¶ 4-7.  Neither Plumbers nor

any of the Defendants in this action were parties to that case.  *See* Civil Action Complaint,

---

[4] According to Plumbers, it retained Express Scripts as its PBM, one of the largest pharmacy benefit managers in the U.S.  Mar. 29, 2016 Hearing Tr. at 6:13-18 (attached hereto as Exhibit A).  During the Court's Rule 16 conference, counsel for Plaintiff described PBMs as the "800-pound gorillas of drug pricing" with substantial leverage to work on behalf of clients like Plumbers to negotiate pricing concessions from both drug manufacturers and retail pharmacies.  *Id.* at 6:11-12.

[5] While Plumbers alleges that AWP was a "key component" of its reimbursement formula, it does not allege how this "key component" was utilized—that is, what discount was applied to AWP, what other payment rates or alternative formulas were available and/or used, and whether it received any manufacturer rebates.  The Amended Complaint thus lacks even the most basic details of Plumbers's own reimbursement system, much less specific details about its reliance on benchmarks labeled "AWP".

[6] The Amended Complaint contains several paragraphs referencing Congressional inquiry letters sent to certain generic drug manufacturers seeking information about price increases for generic medications, *see* Am. Compl. ¶¶ 8-17, but these allegations are not tied to AWPs or any claim for relief.  Indeed, these allegations are entirely irrelevant to the claims pled in this action.

*Commonwealth v. TAP Pharm. Prods., Inc.*, No. 212 M.D. 2004 (Pa. Commw. Ct. March 10, 2004) (attached hereto as Exhibit B).  But Plumbers and some of the Defendants here were parties to other "AWP" actions, including a 2003 New Jersey state court class action where Plumbers intervened as the named plaintiff and made virtually identical allegations to those in this case, and the Court may take judicial notice of the prior litigation and the allegations Plumbers made there.[7]  That prior litigation history shows that Plumbers alleged that benchmarks labeled "AWP" exceed average market prices when it joined the New Jersey action in 2008.

### 1.    Plumbers Joined the New Jersey AWP Litigation in 2008

In 2003, the International Union of Operating Engineers, Local No. 68 Welfare Fund ("IUOE") filed a class-action complaint on behalf of a putative class of private consumers and third-party payors in the Superior Court of New Jersey.  The complaint alleged that manufacturers of both branded and generic drugs had engaged in a fraudulent scheme by "deliberately overstating AWPs," causing the putative class to overpay for certain drugs.  *See* Complaint, *Int'l Union of Operating Eng'rs, Local No. 68 Welfare Fund v. AstraZeneca PLC*, No. MON-L-3136-06, ¶ 15 (N.J. Super. Ct. Eq. Div. June 30, 2003) (the "2003 New Jersey AWP Compl.") (attached hereto as Exhibit C).

Plumbers sought to join the New Jersey action on July 9, 2008, when it "agreed to act as a class representative and to fully participate in all aspects of litigation, including discovery." Per Curiam Decision, *Int'l Union of Operating Eng'rs, Local No. 68 Welfare Fund v. AstraZeneca PLC*, Docket No. A-0605-08T2, slip. op. at 10 (N.J. Super. Ct. App. Div., May 1,

---

[7] The Third Circuit has consistently described court documents and judicial opinions as public records, properly considered at the motion-to-dismiss stage of a proceeding.  *See, e.g.*, *S. Cross. Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."); *U.S. ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 140 (E.D. Pa. 2012) ("Among the public records a court may examine in order to resolve a motion to dismiss is a judicial proceeding from a different court or case.") (quoting *In re Able Labs Sec. Litig.*, No. 05-2681, 2008 U.S. Dist. LEXIS 23538, at *59 n. 21 (D.N.J. Mar. 24, 2008)).

2009) (attached hereto as Exhibit D); July 7, 2008 Affidavit of Thomas J. McNulty, the Fund Administrator for Plumbers ¶ 2 (Plumbers "has agreed to act as a representative of the Class") (attached hereto as Exhibit E).  As part of the motion to serve as class representative, Plumbers alleged that it had paid reimbursements for drugs on the basis of published AWP.  *See* May 5, 2009 Affidavit of T. McNulty ¶ 2 (attached hereto as Exhibit F).  The Court granted the motion and added Plumbers as a class representative.  *See* Order, *Int'l Union of Operating Engineers, Local No. 68 Welfare Fund v. AstraZeneca*, No. MON-L 3136-06 (N.J. Super. Ct. Law Div. Aug. 16, 2010) (attached hereto as Exhibit G).  As a class representative, Plumbers adopted the pleadings which included allegations that AWPs were inflated.  Plaintiff's Reply in Support of Motion to Add Class Representatives, *Int'l Union of Operating Eng'rs, Local No. 68 Welfare Fund v. Astrazeneca*, at 4-6 (N.J. Super. Ct. Law Div. Oct. 5, 2009) (attached hereto as Exhibit H).

### 2.   The Amended Complaint in This Case Mirrors the 2003 New Jersey AWP Complaint

The allegations in the 2003 New Jersey AWP Complaint are substantively identical to the allegations Plumbers resurrects here.  Both complaints allege that drug manufacturers engaged in a fraudulent scheme to "inflate" AWPs and create and market "spreads" for prescription drugs to gain market share.  To take just a few examples:

- *Compare* 2003 New Jersey AWP Compl. ¶ 112: "***By deliberately inflating the AWP above the actual acquisition cost*** to the medical provider or other seller, the prescription drug manufacturer ***defendants created a "spread"*** between what they set as the AWP and the actual price paid by medical providers and other suppliers for their drugs."

  *with* Am. Compl. ¶ 176: "By setting AWPs at prices ***other than actual average wholesale prices***, [defendants have] ***generated 'spreads'*** between the actual average wholesale prices and the inflated AWPs . . ."

- *Compare* 2003 New Jersey AWP Compl. ¶ 112: "Once established, ***such spreads were then marketed by defendants*** as a profit to medical providers and other

suppliers and were used to ***incentivize medical providers and other suppliers to prescribe*** and sell the . . . drugs over other drugs[.]"

*with* Am. Compl. ¶ 413: "In order to gain market share by inducing customers to purchase, prescribe, or recommend one drug over another, the ***defendants overtly and aggressively promoted spreads*** to their customers, throughout the relevant time period, ***as a reason to purchase and/or prescribe*** their drugs over other options for healthcare treatment."

- *Compare* 2003 New Jersey AWP Compl. ¶ 136: "Defendants ***conspired and agreed to accomplish the fraudulent marketing and sales scheme*** set forth herein in order to increase the sales of their drugs, profits, and market shares, and they committed acts in furtherance of this conspiracy[.]"

   *with* Am. Compl. ¶ 611: "Pursuant to the ***unfair and deceptive marketing and sales scheme and conspiracy*** alleged herein, and in furtherance thereof, defendants and their co-conspirators engaged in a wide range of activities, the purpose and effect of which was to deceive Plaintiff and the Class, and acted or took substantial steps in furtherance of the conspiracy."

Plumbers cannot now disclaim what it previously alleged about benchmark pricing information labeled "AWP".  Nor is there any basis for drawing a distinction between what Plumbers alleged in New Jersey in 2008 and what it alleges in the Amended Complaint here. Plumbers's New Jersey complaint alleged that published AWPs were inflated across the board, regardless of whether they were for branded or generic medications.  2003 New Jersey AWP Compl., Ex. C at ¶¶ 108-113.  Its allegations afford no basis to say that the AWP inflation alleged in New Jersey was limited to certain medications or certain manufacturers, such that Plumbers was somehow unaware then of what it contends eight years later here.

### C.   Plumbers Settled Claims Based on Nearly Identical Allegations

Plumbers's New Jersey Action is not its only prior participation in AWP litigation. Around the same time Plumbers joined the 2003 New Jersey AWP action, it also joined an AWP class action settlement in multi-district litigation pending before Judge Patti B. Saris in the

District of Massachusetts.[8]  In *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-CV-12257 (the "2002 MDL Class Action"), private third-party payors and consumers brought a class action against brand and generic pharmaceutical manufacturers, including several named here, alleging AWP inflation claims similar to those at issue in this case.  *See* Fifth Amended Consolidated Complaint, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-CV-12257 (D. Mass. Apr. 26, 2007) (the "2002 MDL Complaint").  Indeed, as with the 2003 New Jersey AWP lawsuit, the 2002 MDL Class Action contained numerous allegations that mirror those in this lawsuit, and in some instances are ***exactly*** the same. For example:

- *Compare* 2002 MDL Complaint ¶ 151: ***"[T]he AWPs for drugs at issue here bore little relationship to the drugs' pricing in the marketplace. They were simply fabricated and overstated in furtherance of Defendants' scheme to generate the profit spread to providers, PBMs and others*** and to increase Defendants' profits at the expense of Plaintiffs and the Class members."

  *with* Am. Compl. ¶ 188: ***"[T]he AWPs for the drugs at issue here bore little relationship to the drugs' pricing in the marketplace. They were simply fabricated and overstated in furtherance of defendants' scheme to generate a spread profit to providers, PBMs and others*** in the chain of drug distribution, and to increase the defendants' profits at the expense of Local 690 and the Class."

- *Compare* 2002 MDL Complaint ¶ 200: "Documents produced by Defendant generic manufacturers show that they are ***aware of the AWPs reported by their competitors*** and of the actual sales price of their generic competitors and that they manipulate their own AWPs ***in order to gain or maintain a competitive advantage in the market*** for their generic products."

  *with* Am. Compl. ¶ 414: "All defendants have been aware of the importance of the spread for marketing purposes. All defendants published their AWPs in compendia product catalogues so that providers could determine the spread based upon the reimbursement they could achieve from payors like Plaintiff and the Class. All ***defendants monitored their reported prices, and those of their competitors, to ensure that their customers were not disadvantaged by noncompetitive spreads*** for their drugs."

---

[8] Certain Defendants have filed individual motions to dismiss on the grounds that Plumber's participation in the settlement of this multi-district litigation bars suit against those Defendants in this action.

A settlement of the 2002 MDL Class Action was preliminarily approved on July 2, 2008, and insurers like Plumbers were given until March 16, 2009 to opt out or file a settlement claim. *See* Dkts. 5426, 6760.  Plumbers submitted a timely claim and received an allocation of the settlement fund in 2009.  *See* Dkt. 8167 at 123.  For the reasons explained below, Plumbers's prior participation in the two AWP cases requires dismissal of its claims here.

## ARGUMENT

I.  **PLUMBERS'S KNOWLEDGE OF THE ALLEGED FALSITY OF BENCHMARKS LABELED "AWP" BARS ALL PENNSYLVANIA STATE LAW CLAIMS FOR PAYMENTS MADE, AT A MINIMUM, ON OR AFTER JULY 9, 2008**

Because each of Plumbers's claims in this action is grounded in fraud, Plumbers must plead and prove that it was not aware of the supposed falsity of Defendants' alleged misrepresentations.  *See Bret Binder v. Weststar Mortg., Inc.,* No. CV 14-7073, 2016 WL 3762710, at *15 (E.D. Pa. July 13, 2016) (dismissing common law fraud and UTPCPL claims where pleadings "clearly state [Plaintiff] was aware" of alleged misrepresentation); *Christidis v. First Pa. Mort. Trust*, 717 F.2d 96, 99 (3d Cir. 1983) (ignorance of falsity required to plead fraud); *In re Thorne's Estate*, 25 A.2d 811, 816 (Pa. 1942) (where plaintiff "knew the truth it is obvious that he was neither deceived nor defrauded and that any loss he may sustain is not traceable to the representation but is in effect self-inflicted.").

On July 9, 2008, Plumbers agreed to act as class representative in the New Jersey action. When it did so, Plumbers adopted and affirmatively alleged as its own statement the allegations set forth in the operative Complaint in the New Jersey Action.  Those allegations include allegations essentially identical to those at the core of this action: *i.e.*, that Defendants reported benchmarks labeled "AWP" that were false and deceptive because these benchmarks were higher than the actual average of market prices.  Plumbers cannot now claim that it was unaware of the

alleged falsity of the benchmarks labeled "AWP" by the Defendants.  To the contrary, by at least

July 9, 2008, if not before, Plumbers was well aware of how benchmarks labeled "AWP" were

used and understood in pharmaceutical reimbursement.  Therefore, it cannot (and does not) claim

to have believed that benchmarks labeled "AWP" represented the actual average of market prices

from that time forward.  Plumbers's knowledge of what it now describes as "falsity" precludes it

from maintaining claims for payments made, at a minimum, on or after July 9, 2008.

Accordingly, all such claims must be dismissed with prejudice.[9]

## II.   PLUMBERS'S PENNSYLVANIA STATE LAW CLAIMS FOR PAYMENTS MADE BEFORE DECEMBER 30, 2009 ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS

### A.   Plumbers's Claims for Payments Made Before December 30, 2009 Are Time-Barred

Under Pennsylvania law, a limitations period begins to run "as soon as the right to

institute and maintain a suit arises, which is generally when the injury was inflicted." *Drelles v.*

*Mfrs. Life Ins. Co.*, 881 A.2d 822, 831 (Pa. Super. 2005).  "Once a cause of action has accrued

and the prescribed statutory period has run, an injured party is barred from bringing his cause of

action." *Id.*  Where it is evident from the face of the complaint that claims are time-barred, the

claims should be dismissed.  *See Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 160 (3d

Cir. 2014).  Plumbers asserts that it is entitled to recover the alleged overpayment it made every

time it purportedly used methodologies incorporating benchmarks labeled "AWP" to determine

the amount it reimbursed a pharmacy for a prescription dispensed to one of its members.  But

Plumbers did not commence this action until December 30, 2015, and on the face of the

---

[9] Moreover, Plumbers's claims occurring on or after March 16, 2009 are further barred by virtue of the fact that Plumbers affirmatively joined the settlement class in the 2002 MDL Class Action by this specified deadline for opting in, and was aware of the purported nature of reported benchmarks labeled "AWP" at that time.

Amended Complaint, all of its claims for payments made before December 30, 2009 are time-barred.[10]

Plumbers's Pennsylvania state law claims are subject to limitations periods of between two and six years.[11]  Because Plumbers filed its complaint on December 30, 2015, all UTPCPL claims accruing before December 30, 2009, all unjust enrichment claims accruing before December 30, 2011, and all fraud, conspiracy, and aiding and abetting claims accruing before December 30, 2013, are time-barred.[12]  Furthermore, as discussed more fully below, Plumbers cannot plead a claim within the applicable limitations period because it has not and cannot show justifiable reliance or causation—necessary elements of all of its Pennsylvania state law claims—at any time within the past six years.  Consequently, Plumbers's Pennsylvania state law claims should be dismissed with prejudice.

### B.    Plumbers Cannot Toll the Applicable Limitations Periods by Pleading Fraudulent Concealment

Recognizing that its Pennsylvania state law claims are time-barred, Plumbers attempts to save its claims by invoking the doctrine of "fraudulent concealment."  Am. Compl. ¶ 172, 435-39.  Fraudulent concealment is an equitable doctrine that can toll the limitations period only where a plaintiff alleges (and eventually proves) facts showing that "through fraud or concealment" the defendant caused "the plaintiff to relax his vigilance or deviate from his right of inquiry."  *Molineaux v. Reed*, 532 A.2d 792, 794 (Pa. 1987) (citation and quotation marks

---

[10] For certain defendants,  including Mylan Laboratories, Inc. n/k/a Mylan Inc., Mylan Pharmaceuticals, Inc., UDL Laboratories, Inc., and Mylan Technologies, Inc. f/k/a Bertek Inc., claims prior to March 29, 2010 are also barred, as such defendants were named for the first time in the March 29, 2016 Amended Complaint.

[11] The statute of limitations is six years for the UTPCPL claim, four years for the unjust enrichment claim, and two years for the negligent misrepresentation/fraud, civil conspiracy, and aiding and abetting claims. *Arndt v. Johnson & Johnson*, 67 F. Supp. 3d 673, 682 (E.D. Pa. 2014) (UTPCPL); *In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. 150, 164 (E.D. Pa. 2015) (unjust enrichment); 42 Pa. Cons. Stat. § 5524(7) (negligent misrepresentation/fraud, civil conspiracy, and aiding and abetting claims).

[12] With respect to the Defendants brought into this action on March 29, 2010, *see supra*  at 11 n. 10, all UTPCPL claims accruing before March 29, 2010, all unjust enrichment claims accruing before March 29, 2012, and all fraud, conspiracy, and aiding and abetting claims accruing before March 29, 2014, are time-barred.

omitted); *see also Kingston Coal Co. v. Felton Mining Co.*, 690 A.2d 284, 291 (Pa. Super. Ct. 1997) (a plaintiff must demonstrate that the defendant "committed some affirmative independent act of concealment upon which plaintiffs justifiably relied").  But once "the injured party knows or reasonably should know of his injury and its cause," the doctrine of fraudulent concealment ceases to apply.  *Fine v. Checcio*, 870 A.2d 850, 861 (Pa. 2004); *see also David v. Grusemeyer*, 996 F.2d 617, 624 (3d Cir. 1993) (fraudulent concealment "does not come into play . . . if a Plaintiff is on notice of a potential claim"), *overruled on other grounds by Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998).  Plumbers's fraudulent concealment allegation is unavailing for two reasons.

**First,** Plumbers's own litigation history establishes that Plumbers was aware many years ago that benchmarks labeled "AWP" did not represent the actual prices paid for prescription drugs in the marketplace.  Plumbers's participation in earlier litigation making the same allegations at issue here further belies its claim that it had no "way of knowing about the conduct of the generic drug companies alleged herein due to this complicated, non-transparent system."  Am. Compl. ¶ 172.  As noted above, Plumbers joined the New Jersey AWP litigation in July of 2008, and sought and received settlement funds from the MDL Class Action in 2009, and the complaints in those cases allege the same conduct Plumbers alleges here.  Ironically, the Amended Complaint purports to find support in the fact that the so-called "2004 Brand Name Prescription Drug Lawsuit" involved the same alleged practice of "inflating AWPs and promoting spreads."  *See* Am. Compl. ¶ 4.

Plumbers cannot have it both ways: Plumbers cannot rely on the 2004 lawsuit to bolster its claims regarding inflated AWP, yet simultaneously claim ignorance of the allegations in that case so as to equitably toll the statutes of limitation.  *See Atl. Pier Assocs., LLC v. Boardakan*

-12-

*Rest. Partners, L.P.*, No. 08-4564, 2011 U.S. Dist. LEXIS 83414, at *19-21 (E.D. Pa. July 29, 2011) (dismissing claims on limitations grounds where prior lawsuit from same plaintiffs demonstrated awareness of the "central facts" underlying their claims, even where they did not know "each factual nuance" of their claims against the defendants in the later-filed suit); *Wark v. DePuy, Inc.*, No. 95-C-684, 1995 WL 382964, at *3 (N.D. Ill. June 22, 1995) (holding previous filing of similar lawsuit outside the limitations period bars a plaintiff's later-filed claims because "the filing of a lawsuit indicates as a matter of law that the plaintiff has knowledge of an injury and that he believes the injury was wrongfully caused"); *Colarossi v. Schmid Lab.*, 830 F. Supp. 230, 237 (D.N.J. 1993) (plaintiff's suit against a product manufacturer was time barred when that plaintiff previously filed an identical suit against the wrong manufacturer and should have discovered the error with due diligence).

***Second***, in light of Plumbers's awareness of the nature of Defendants' benchmarks labeled "AWP", it is not surprising the Amended Complaint is devoid of allegations supporting the application of the doctrine of fraudulent concealment.  Pleading fraudulent concealment requires "particularized facts sufficient to suggest '(1) that the defendant[s] actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of [its] claim within the limitations period; and (3) [that] the plaintiff's ignorance is not attributable to [its] lack of reasonable due diligence to attempting to uncover the facts.'"  *In re Processed Egg Prods. Antitrust Litig.*, 08-md-02002, 2011 WL 5980001, at *3 (E.D. Pa. Nov. 30, 2011); *see also Arndt v. Johnson & Johnson*, 67 F. Supp. 3d 673, 679 (E.D. Pa. 2014) (observing that "Rule 9(b) requires that fraudulent concealment must be pleaded with specificity" (citing *Byrnes v. Debolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984) ("We agree, of course, that fraud, and thus fraudulent concealment, must be pleaded with particularity."))).  On this score, Plumbers fails to

-13-

provide the required specificity in its allegations, including, among other things, date, time, place, or speaker of any alleged misrepresentation.

Plumbers also fails to plead the second element. The Amended Complaint offers nothing more than vague, conclusory statements regarding Plumbers's alleged lack of knowledge of the facts underlying its claims before the statutes of limitations expired. Such conclusory allegations are insufficient as a matter of law. *See* Am. Compl. ¶¶ 172, 436-37; *see also Processed Egg*, 2011 WL 5980001, at *11 (rejecting as conclusory plaintiffs' generalized allegations that they had no knowledge of the alleged conspiracy). Moreover, as described above, this Court can take judicial notice of Plumbers's prior participation in lawsuits alleging the very same facts which it now contends it did not know.

Plumbers also fails to plead the third element of fraudulent concealment, because the Amended Complaint does not allege that Plumbers exercised reasonable diligence, or that it engaged in *any* form of investigation, to uncover its claims. *See Fine*, 870 A.2d at 861 ("[T]he standard of reasonable diligence . . . should apply when tolling takes place under the doctrine of fraudulent concealment"); *Baumgart v. Keene Bldg. Prods. Corp.*, 633 A.2d 1189, 1193 (Pa. Super. Ct. 1993) (internal citations omitted) (the issue "is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff. The failure to make inquiry when information is available is a failure to exercise reasonable diligence as a matter of law."); *Processed Egg*, 2011 WL 5980001, at *11 (holding that plaintiff who fails to allege due diligence is "virtually foreclosed from asserting the fraudulent concealment doctrine"). Notably, Plumbers does not plead any date at which it became aware of the alleged claims of which it complains, and this deficiency precludes equitable tolling entirely. *White v. PNC Fin. Servs. Grp., Inc.*, No. CIV. A. 11-7928, 2013 WL

3090823, at *8 (E.D. Pa. June 20, 2013) (holding that a complaint that fails to plead the date of and circumstances surrounding plaintiffs' discovery of the facts underlying their claims "provides no frame of reference for their discovery and does not enable [the court] to conclude, even at this early stage, that Plaintiffs' earlier ignorance was not attributable to their lack of diligence."). These omissions are fatal to Plumbers's effort to invoke fraudulent concealment.

Accordingly, the doctrine of fraudulent concealment cannot save Plumbers's time-barred claims and, in the face of its long-established knowledge of the facts it alleges in support of those claims, no amendment to its pleadings could revive this action. The Court should dismiss the Amended Complaint with prejudice. *See, e.g.*, *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (affirming district court's dismissal with prejudice where amendment would have been futile because claims were time-barred).[13]

## III.  PLUMBERS FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED UNDER PENNSYLVANIA LAW

A complaint that fails to state a plausible claim for relief must be dismissed at the outset. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (courts should expose deficiencies "at the point of minimum expenditure of time and money by the parties and the court") (internal quotation and citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). In assessing whether a plaintiff has alleged sufficient facts to make out a plausible claim for relief, the court must consider "context" and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "Naked

---

[13] For the same reasons, the "discovery rule" (mentioned in passing in the Amended Complaint, Am. Compl. ¶ 438) cannot save Plumbers's time-barred claims. Like the doctrine of fraudulent concealment, the discovery rule is a narrow equitable doctrine that "tolls the statute of limitations" only "where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises." *Fine*, 870 A.2d at 859. But where, as here, reasonable minds could not differ "in finding that [Plumbers] knew or should have known on the exercise of reasonable diligence of [its] injury and its cause, … the discovery rule does not apply as a matter of law." *Id.* at 858-59.

assertion[s]," "threadbare recitals of the elements of a cause of action," or "mere conclusory statements" are insufficient to survive a motion to dismiss. *Id.* at 678.

Because each of Plumbers's Pennsylvania state law claims is grounded in fraud, Rule 9(b)'s heightened pleading standard applies. *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (3d Cir. 2015) ("[A]ll of Plaintiffs' claims alleging fraudulent activity—i.e., Plaintiffs' claims for intentional and negligent misrepresentation, unjust enrichment and an injunction—must be pled with sufficient particularity under Rule 9(b)"); *Taggart v. Wells Fargo Home Mortg., Inc.*, 563 F. App'x 889, 892 (3d Cir. 2014) (requiring Plaintiff to plead UTPCPL claims with particularity); *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 301 n.9 (3d Cir. 2011); *Plumbers's Local Union No. 690 v. Sanofi, S.A.*, No. 15-cv-956 (KM) (MAH), 2016 U.S. Dist. LEXIS 62673, at *17-21, 40 (D.N.J. May 11, 2016) (dismissing Plumbers's UTPCPL claim under Rule 9(b)). To satisfy this standard, Plumbers must allege the particulars of its fraud-based claims, including "the time, place and substance of the defendant's alleged conduct." *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998). Further, Plumbers must allege the particular facts as to each defendant; it cannot rely solely on undifferentiated group pleading. *See, e.g.*, *Lum v. Bank of Am.,* 361 F.3d 217, 224 (3d Cir. 2004) (citing *Saporito v. Combustion Eng'g Inc.,* 843 F.2d 666, 675 (3d Cir. 1988), *vacated on other grounds*, 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989)) (holding that plaintiffs failure to allege "who made a representation to whom" for each defendant did not meet Rule 9(b) particularity requirements); *Kemezis v. Matthew*, CIV. A. No. 07-5086, 2008 WL 5191587, at *2 (E.D. Pa. Dec. 10, 2008), *aff'd sub nom. Kemezis v. Matthews*, 394 F. App'x 956 (3d Cir. 2010) (Plaintiffs' conclusory allegations that "Defendants" collectively engaged in fraudulent or deceitful acts failed under Rule 9(b)); *see also Dolan v. PHL Variable Ins. Co.*,

3:15-cv-01987, 2016 U.S. Dist. LEXIS 161414, at *15-16 (M.D. Pa. Nov. 22, 2016) (dismissing UTPCPL and fraud claims because Rule 9(b) "require[s] plaintiffs to differentiate their allegations when suing more than one defendant" (internal quotations omitted)); *Silverstein v. Percudani,* 422 F. Supp. 2d 468, 473 (M.D. Pa. 2006) ("A complaint that 'lumps' together numerous defendants does not provide sufficient notice of which defendants allegedly made the misrepresentations." (citations omitted)).  Plumbers does not meet these requirements.

### A.    Plumbers Fails to Adequately Plead an AWP Claim

To satisfy the requirements of Rule 9(b), Plumbers must allege the "who, what, when where and how" of the alleged fraud.  *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (internal quotation and citation omitted)).  According to Plumbers, a new claim accrued each time that Plumbers reimbursed a pharmacy for dispensing one of Defendants' drugs based on a published benchmark labeled "AWP" that was allegedly "inflated."  For each such claim, therefore, Plumbers must allege (at a minimum): (1) the drug dispensed to a member (including the name of the manufacturer of that drug); (2) the date the drug was dispensed to the member; (3) the pharmacy that was reimbursed for dispensing the drug and the date of the reimbursement; (4) the false or deceptive statement relied upon by Plumbers when it calculated the amount of its payment (here, presumably, the allegedly "false" benchmarks labeled "AWP"); (5) the identity of the individual who made the allegedly "false" statement; (6) the date on which the allegedly "false" statement was made; (7) facts sufficient to demonstrate how the allegedly false statement affected Plumbers's calculation of the amount reimbursed; (8) the actual amount reimbursed; and (9) the actual amount of any alleged "overpayment."[14]  *See id.*; *see also Sunshine v. Reassure Am. Life Ins. Co.*, No. 10-1030, 2012 U.S. Dist. LEXIS 30441, at *13 (E.D. Pa. March 6, 2012).

---

[14] Plumbers must also allege to what degree they relied upon a PBM to negotiate or advise upon reimbursement.

The Amended Complaint fails to include this detail for even a *single* payment, much less for all of the payments at issue in the action for each Defendant.  Indeed, in the 626 paragraphs of the Amended Complaint, Plumbers identifies supposedly fraudulent benchmarks labeled "AWP" for only *four* drugs, manufactured by only three of the Defendants, and even that sliver of information is more than a dozen years old, well outside the longest applicable limitations period.  *See* Am. Compl. ¶¶ 313, 323, 349.[15]

Eschewing the specificity required to plead claims sounding in fraud, Plumbers opts instead to make broad allegations that all drugs under each Defendant's labeler codes had "inflated AWPs."  *See e.g.*, Amended Compl. ¶ 117.[16]  Moreover, the Amended Complaint repeatedly lumps all 67 Defendants together in boilerplate allegations of fraud, making broad-stroke reference to "unlawful acts and practices of the defendants," Am. Compl. ¶ 196, with nondescript allegations such as: "defendants made [] false representations with the intent of misleading Plaintiff," Am. Compl. ¶ 596, "defendants knew or should have known" of the substance of Plumbers's allegations, Am. Compl. ¶¶ 181, 184, 185, and "defendants continued to transmit" allegedly inflated AWPs, Am. Compl. ¶ 186.[17]

The same is true of Plumbers's allegations regarding prescription drug samples and alleged physician inducements.  *See* Am Compl. ¶¶ 196, 416-18.  These cursory allegations fail to distinguish between the legitimate provision of drug samples (which in and of itself is commonplace and legal) and instances in which samples were allegedly used as part of some

---

[15] The Amended Complaint is completely devoid of any specific facts about allegedly fraudulent AWPs regarding all defendants, with the exception of allegations of a few increases in benchmarks labeled "AWP" for a few drugs manufactured by Defendants Mylan (¶¶ 313-14), Par (¶ 323), and Sandoz (¶ 349).

[16] Importantly, a labeler code does not identify particular drugs, it represents only the manufacturer identification portion of an eleven-digit national drug code that together identifies the manufacturer, dosage form, strength, and package size.

[17] The Amended Complaint elsewhere lumps subsets of Defendants into alleged corporate groups and attributes all activity to the corporate group without specifying the allegedly responsible corporate actor.  *See, e.g.*, Am. Compl. ¶ 32.  Plumbers provides no basis for ignoring corporate separateness.

"AWP fraud" scheme.  Plumbers references prior criminal and civil actions against other pharmaceutical manufacturers not named here, *i.e.*, TAP Pharmaceuticals and AstraZeneca, involving physician billing for free samples.  Am. Compl. ¶¶ 4, 423.  But the Amended Complaint provides no basis for a plausible inference that any one of the defendants actually involved in this litigation—let alone the "Defendants" (plural)— told physicians to bill for free samples.

The Amended Complaint is similarly deficient in its general allegation that "Defendants also have provided and/or arranged for many other non-public financial inducements to drive sales of their drugs" such as "volume discounts, rebates, off-invoice pricing, free goods [], credit memos, consulting fees, debt forgiveness and educational and promotional grants."  Am. Compl. ¶ 426.  This kind of catch-all allegation, devoid of particulars as to which defendant was involved and what any defendant allegedly did, let alone any "time, place and manner" allegations, does not satisfy Rule 9(b).  *See, e.g.*, *Stewart v. Evans,* 3:CV-09-1428, 2009 U.S. Dist. LEXIS 75969, at *13-15 (M.D. Pa. Aug. 25, 2009); *Falat v. County of Hunterdon*, Civ. A. No. 12-6804, 2013 U.S. Dist. LEXIS 37398, at *12-13 (D.N.J. Mar. 19, 2013); *Japhet v. Francis E. Parker Mem'l Home, Inc.*,  Civ. A. No. 14-01206, 2014 U.S. Dist. LEXIS 105134, at *7 (D.N.J. July 31, 2014) ("[a]lleging that 'Defendants' undertook certain illegal acts—without more—injects an inherently speculative nature into the pleadings forcing both the Defendants and the Court to guess who did what to whom when.  Such speculation is anathema to contemporary pleading standards."); *see also TAP Pharm. Prods., Inc.*, 868 A.2d 624, 635 (Pa. Commw. Ct. 2005) (dismissing AWP complaint that failed "to discriminate with regard to the conduct of each Defendant, as to the manner of fraud, and their drugs.").

The lack of particularity is made even more evident when Plumbers combines allegations that are not directed at any identified defendant with generalized allegations about a laundry list of alleged "inducements."  Because this type of group pleading "undermines the notice pleading regime of Rule 8," and falls far short of the heightened Rule 9(b) standard, Plumbers's claims must be dismissed.  *Japhet*, 2014 U.S. Dist. LEXIS 105134, at *6 (citing *Twombly*, 550 U.S. at 555).

### B.   Plumbers Does Not and Cannot Plausibly Plead Reliance and Causation

Reliance and causation are key elements of claims sounding in fraud, including claims under the UTPCPL.  *See* 73 Pa. Stat. § 201-9.2(a) (permitting UTPCPL suit by private plaintiffs who suffer loss "*as a result of*" the defendant's deception) (emphasis added); *see also Hunt v. U. S. Tobacco Co.*, 538 F.3d 217, 221-22 (3d Cir. 2008) (private plaintiff pursuing a claim under UTPCPL statute must prove justifiable reliance); *Scaife Co. v. Rockwell-Standard Corp.*, 285 A.2d 451, 454 (Pa. 1971) (reliance and causation are elements of common-law fraud); *Kern v. Lehigh Valley Hosp.*, 108 A.3d 1281, 1289 (Pa. Super. Ct. 2015) (holding private plaintiff must prove reliance when asserting UTPCPL claim).  Not only has Plumbers failed to plausibly allege reliance and causation—let alone meet the particularity requirements of Rule 9(b)—Plumbers's allegations affirmatively preclude any plausible allegation of justifiable reliance and causation.

*First,* Plumbers's awareness by at least July 2008 that published AWPs did not represent the average prices paid by pharmacies, as demonstrated by its participation in prior AWP lawsuits, precludes Plumbers from plausibly pleading justifiable reliance for any alleged overpayment made after that date.  *Emery v. Third Nat'l Bank of Pittsburgh*, 162 A. 281, 284 (Pa. 1932) ("If a man knows the truth about a representation, he is neither deceived nor defrauded, and any loss he may sustain is in effect self-inflicted."); *Philadelphia v. Lead Indus.*

-20-

*Ass'n*, Civ. A. No. 90-7064, 1992 U.S. Dist. LEXIS 5849, at *10 n.4 (E.D. Pa. Apr. 23, 1992) ("[Plaintiff's] knowledge negates the *affirmative element of reliance* which plaintiffs must adequately (and specifically) plead in order to avoid dismissal of the count").  And even putting aside Plumbers's actual knowledge that benchmarks labeled "AWP" do not represent an average of actual prices paid for prescription drugs, Plumbers **should have known** by at least the early 1990s that published AWPs did not represent the average of actual prices paid for prescription drugs.  Where a plaintiff should have known that an alleged misrepresentation was false, that plaintiff cannot claim justifiable reliance on the alleged misrepresentation.  *Porreco v. Porreco*, 811 A.2d 566, 571 (Pa. 2002).

**Second**, Plumbers cannot claim that Defendants' alleged fraud caused its injuries.  Once Plumbers was aware that benchmarks labeled "AWP" were not averages of actual prices paid, it was injured (if at all) by its own conduct, not any act of the Defendants.  *Teamsters Local 237 Welfare Fund v. AstraZeneca Pharms. LP,* No. 415,2015, 2016 Del. LEXIS 236, at *18-19 (Del. Apr. 12, 2016) ("Under any reasonable interpretation of the statutes, [third party payors] who continue to pay or reimburse for Nexium, while claiming they were harmed by allegedly false advertising, are neither 'victims' of the allegedly false advertising nor were they injured by reason of or as a result of it. They were injured by their own conduct."); *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336 (S.D.N.Y. 2007) (plaintiffs were not "actually injured or aggrieved" by defendant's conduct where they continued to pay for a prescription drug notwithstanding knowledge of its alleged lack of benefits); *Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 379 (D.N.J. 2004) (plaintiffs did not suffer ascertainable economic loss because of their continued use of the drugs in question while claiming a failure to disclose known risks).

***Third*,** Plumbers does not and cannot allege facts showing that it actually relied on published AWPs being actual averages of wholesale prices for any part of the relevant time period.  Rather than identifying such facts, Plumbers avers in conclusory fashion that it "relied on [ ] AWPs to [its] detriment" and was misled into "relying on AWP as a real and fact-based price, rather than an artificially inflated price."  Am. Compl. ¶¶ 539, 596.  Plumbers does not allege that it ever believed benchmarks labeled "AWP" were "actual averages" of wholesale prices, nor could it have done so.  There was longstanding and widespread knowledge that published AWPs are, as Plumbers counsel told the Court, a "convention."  Mar. 29, 2016 Hearing Tr., Ex. A at 5:15-6:2.  *See also AstraZeneca LP v. State*, 41 So. 3d 15, 20 (Ala. 2009) (finding reimbursement at a discount from AWP by Alabama Medicaid program "the most irrefutable evidence of the State's actual understanding" of AWP and precluded a finding of reasonable reliance).

***Fourth***, although Plumbers claims that reliance on published AWPs resulted in higher reimbursement rates, the Amended Complaint does not plead or set forth any facts showing ***how*** "inflated" AWPs caused it to pay higher reimbursement costs for any part of the relevant time period.  Indeed, although Plumbers makes the conclusory claim that it "reimbursed for prescription drugs . . . on the basis of . . . inflated Average Wholesale Prices," Am. Compl. ¶ 29, Plumbers does not detail its reimbursement formula, much less explain how published AWP factored into that formula.

In sum, Plumbers has not set forth any facts showing that but for allegedly inflated AWPs, it would have paid less for a single generic drug prescription.  Nor has Plumbers alleged that it altered its practices in any way or that it is paying less today than what it paid previously. *AstraZeneca*, 41 So. 3d at 28 ("[W]here plaintiff would have adopted the same course

irrespective of the misrepresentation and would have sustained the same degree of damages, anyway, it cannot be said that the misrepresentation caused any damage, and the defendant will not be liable therefor." (quotations omitted)).

### C.       Plumbers's Claims Fail on Additional Grounds

Beyond these overarching and dispositive pleading deficiencies, the Amended Complaint fails to plead essential elements of the individual causes of action enumerated in the Amended Complaint.  For these further reasons, the Amended Complaint should be dismissed.

### 1.       Plumbers's UTPCPL Claim Is Inadequately Pled

Plumbers's UTPCPL claim should be dismissed because it does not plead the elements necessary to support a violation as to each Defendant.  *See Wenglicki v. Tribeca Lending Corp.*, 07-cv-4522, 2009 WL 2195221, at *6 (E.D. Pa. July 22, 2009) (dismissing UTPCPL claim because plaintiff had not "alleged with particularity the elements necessary to support a violation . . . as to a particular Defendant") (internal citations omitted).  To state a claim under the UTPCPL, a plaintiff must identify conduct that fits within one of the statute's enumerated categories.  *See, e.g. Andress v. Nationstar Mortg., LLC*, No. 15-1779, 2015 U.S. Dist. LEXIS 133689, at *10 (E.D. Pa. Sept. 30, 2015) (dismissing UTPCPL claims consisting of "nothing more than a conclusory statement rephrasing the terms of the UTPCPL," where plaintiffs did not "identif[y] any enumerated UTPCPL activity engaged in" by defendant).  Plumbers alleges violations of four enumerated UTPCPL provisions, plus the statute's catchall provision (73 Pa. Stat. § 201-2(4)(xxi)), which prohibits fraudulent or deceptive conduct generally.  *See* Am. Compl. ¶ 463.  Because neither the enumerated provisions nor the catchall applies to the conduct at issue in the Amended Complaint, Plumbers's UTPCPL claim fails.

Plumbers first asserts that Defendants violated the UTPCPL by "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of

goods or services."  Am. Compl ¶ 463; 73 Pa. Stat. § 201-2(4)(ii).  But §201-2(4)(ii), which

codifies common-law trademark misappropriation, has no application here.  *See Gabriel v.*

*O'Hara*, 534 A.2d 488, 494 n.11 (Pa. Super. 1987).  Plumbers claims only that Defendants

created confusion regarding "the source of the [AWP] pricing data." Am Compl. ¶ 460

(Defendants "concealed and suppressed from Plaintiff . . . that AWP prices are set and controlled

by them, and not the pricing compendia who publish the inflated AWPs.").  But pricing is

irrelevant to claims under §201-2(4)(ii), which targets confusion as to the source of goods or

services, not their prices.  73 Pa. Stat. § 201-2(4)(ii) (defining "'[u]nfair methods of competition'

and 'unfair or deceptive acts or practices'" as "[c]ausing likelihood of confusion or of

misunderstanding as to the ***source, sponsorship, approval or certification of goods or services***"

(emphasis added)).  The harm alleged by Plumbers from "inflated" AWPs has nothing to do with

the "source, sponsorship, approval, or certification" of Defendants' drugs.[18]

Next, Plumbers asserts that each Defendant "[r]epresent[ed] that goods or services have

sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not

have," "[a]dvertis[ed] goods or services with intent not to sell them as advertised," and "[made]

false or misleading statements of fact concerning the reasons for, existence of, or amounts of

price reductions," in violation of 73 Pa. Stat. §§ 201-2(4)(v), (ix) and (xi).  *See* Am. Compl. ¶

463.  Pennsylvania courts construe claims brought under these sections to be in the nature of

claims for false advertising.  *See Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 466

(E.D. Pa. 2009) ("Pennsylvania state and federal courts have ruled that [§§201-2(4)(v) and (ix)]

---

[18] Any allegation that Defendants concealed or suppressed the source of pricing information is belied by Plaintiff's own pleadings, which elsewhere quote from the 1999 Red Book publication stating that "all pricing information is supplied and verified by the products' manufacturers."  Am. Compl. ¶ 182.  Defendants hardly could have concealed that manufacturers, not the pricing compendia, set AWP when the pricing compendia themselves made this fact clear in publishing the data.

apply only to claims of false advertising."); *Gabriel*, 534 A.2d at 494 n.14 (describing a section 201-2(4)(ix) claim as bait advertising and section 2(4)(xi) claim as "fictitious price cuts").

To state a claim under these false advertising provisions of the UTPCPL, a plaintiff must allege that: (1) the defendant's advertisement is a false representation of fact; (2) the advertisement actually deceives or has a tendency to deceive a substantial segment of its audience; and (3) the false advertisement is likely to make a difference in the decision to purchase a product.  *See Commonwealth v. Percudani*, 844 A.2d 35, 47 (Pa. Commw. Ct. 2004). Moreover, an allegation that a defendant made fraudulent omissions is insufficient to state a claim under these sections, which require a plaintiff to allege a representation or advertisement. *See, e.g., Weisblatt v. Minnesota Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 385 (E.D. Pa. 1998) (noting that "the plain language of [section (v)] requires an affirmative representation as a predicate for liability.").  The Amended Complaint lacks allegations that any Defendant engaged in advertising or otherwise advertised "fictitious price cuts."  Indeed, the Amended Complaint does not plead a single advertisement published by any Defendant for any product, rendering Plumbers's claims pursuant to 73 Pa. Stat §§ 201-2(4)(v), (ix) and (xi) inapplicable.

Nor does Plumbers adequately plead a violation of the UTPCPL's fraud-based catchall provision.  *See* 73 Pa. Stat. § 201-2(4)(xxi) (prohibiting fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding).  Because Plumbers's claim sounds in fraud, it must allege the elements of common-law fraud with particularity.  *See Taggart v. Wells Fargo Home Mortg., Inc.*, 563 F. App'x 889, 892 (3d Cir. 2014) (To establish a claim under the UTPCPL catch-all provision, plaintiff "had to prove the elements of common law fraud," and "state with particularity the circumstances constituting fraud.").  As set forth above, *see supra* at

17-22, and in the following section, Plumbers fails to state an actionable claim for fraud, and its fraud-based claims should be dismissed.

Additionally, to the extent that Plumbers argues that it pleads *deceptive* conduct under the catchall provision, that argument also fails. Conduct is deceptive only if it is "capable of being interpreted in a misleading way." *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC,* 40 A. 3d 145, 154 (Pa. Super. Ct. 2012). Common sense dictates that Plumbers could not have been misled into believing that benchmarks labeled "AWP" represented the average net prices paid by pharmacies because the prevailing understanding in the industry for decades was that this was not the case. Plumbers's participation in the New Jersey AWP lawsuit in 2008 evidenced *undeniable* knowledge of this fact by that time at the latest. *See supra* at 5-6. Benchmarks labeled "AWP" have neither been misleading to nor had a tendency to deceive Plumbers.

### 2.        Plumbers Fails to State a Claim for Fraud

In addition to the absence of reliance or causation, Plumbers's failure to adequately plead that Defendants made material misrepresentations is fatal to its fraud claim. *See, e.g.*, *Taggart*, 563 F. App'x at 892; *Grey v. Johansson*, Civ. A. No. 15-2479, 2016 WL 1613804, at *6 (E.D. Pa. Apr. 22, 2016).

Plumbers asserts that the benchmarks labeled "AWP" Defendants reported were "false representations," Am. Compl. ¶ 593, because the published benchmarks were supposedly "inflated." But these kinds of conclusory allegations do not satisfy its heightened burden. Plumbers does not identify any instance in which any Defendant represented to it—or anyone— that published benchmarks labeled "AWP" were "the prices [Defendants] actually charged their customers in the marketplace." *See, e.g.,* Am. Compl. ¶ 222. And the Amended Complaint provides no particulars—whether by reference to a statute, regulation, or industry understanding or usage—to support the premise of its claim that benchmarks labeled "AWP" are supposed to

represent the average prices paid by pharmacies for drugs. *See* Am. Compl. ¶ 194 ("the AWPs reported by defendants were not actual average wholesale prices charged for their drugs").) These generalized averments of "false" or "inflated" pricing are not enough to survive a motion to dismiss. *See Travelers*, 620 F. App'x at 86 (affirming dismissal of claims alleging "inherently fraudulent" conduct and failing to plead "the particular facts surrounding the alleged fraud.").

Plumbers further asserts that Defendants "never disclosed to Plaintiff and the Class the truth about their inflated AWPs." *See, e.g.*, Am. Compl. ¶ 257. To the extent that Plumbers's theory of misrepresentation is premised on nondisclosure, Plumbers must "plead facts showing that the defendant had a duty to disclose." *See GMH Assocs., Inc. v. Prudential Realty Grp.*, 752 A.2d 889, 902 (Pa. Super. Ct. 2000). Courts have repeatedly held, however, that sellers have no duty to disclose pricing structures to buyers. *See, e.g.*, *Eller v. EquiTrust Life Ins. Co.,* 778 F.3d 1089, 1092-93 (9th Cir. 2015) (noting as "a settled premise" that "a seller generally has no duty to disclose internal pricing policies or its method for valuing what it sells.").

### 3. Plumbers Fails to State a Claim for "Negligent Misrepresentation"

The Amended Complaint lumps negligent misrepresentation with fraud in a single, undifferentiated Count IV. The Amended Complaint does not allege facts sufficient to state a claim for relief.

In order to prove negligent misrepresentation, Plaintiff must prove (1) misrepresentation of a material fact; (2) that the representor either knew of the misrepresentation, or made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended the misrepresentation to induce another to act on it; and (4) that injury resulted from the party acting in justifiable reliance on it. *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). These elements require Plumbers to "allege

when [the] alleged misrepresentations were made, who made them, or how they were communicated." *Scott v. Bimbo Bakeries, Inc.*, No. 10-3154, 2012 WL 645905, at *5 (E.D. Pa. Feb. 29, 2012). As with its fraud claim, Plumbers fails to adequately allege the misrepresentation, causation, and justifiable reliance elements, much less any facts to support those elements, necessary to survive a motion to dismiss.

### 4. The Failure of Plumbers's UTPCPL and Fraud Claims Is Fatal to Its Other Claims

Plumbers's claims for unjust enrichment, civil conspiracy, and aiding and abetting are all predicated on the same conduct undergirding Plumbers's deficient UTPCPL and fraud claims. But because the UTPCPL and fraud claims are untenable, the three additional claims must also be dismissed.

A plaintiff may not proceed with an unjust enrichment claim absent a viable underlying tort claim. *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936-37 (3d Cir. 1999) ("unjust enrichment claim is essentially another way of stating a traditional tort claim" and cannot proceed "once we have determined that the District Court properly dismissed the traditional tort claims"). Similarly, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Servs.*, No. 08–2926, 2010 WL 2470992, at *5 (E.D. Pa. June 14, 2010) (quoting *Pelagatti v. Cohen*, 536 A.2d 1337, 1342 (Pa. 1987)). And a plaintiff "must establish the completion of the underlying tort in order to establish a prima facie case for a claim of aiding and abetting that tort." *Austin v. Hill*, No. 11–2847, 2014 WL 1386338, at *13 (E.D. Pa. Apr. 8, 2014). However, the only claims that could form the predicate tort for these claims are the fraud claims that, as demonstrated above, are inadequately pled. As such, they also fail.

**5.      Plumbers Fails to State a Claim for Unjust Enrichment**

Even if Plumbers's UTPCPL and fraud claims were adequately pled, Plumbers's unjust

enrichment claim fails because Plumbers has not pled how Defendants have been enriched by

Plumbers, unjustly or otherwise.  *See Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. 1999)

(enumerating the elements of an unjust enrichment claim, including that a benefit was conferred

on defendant by plaintiff).  Plumbers states only that "Defendants have been unjustly enriched,"

without identifying any benefit received from Plaintiff for which Defendants are charged with

retaining.  Am. Compl. ¶ 601.  Rather, Plumbers alleges that it has "paid amounts far in excess of

the true cost for such drugs," but those ***payments went to providers (e.g., pharmacies), not***

***Defendants***.  Am. Compl. ¶ 602.

Plumbers cannot avoid this fundamental failing by claiming that Defendants' practices

"were intended to increase the sales and market shares of defendants' drugs, thereby increasing

defendants' profits."  Am. Compl. ¶ 604.  The Amended Complaint fails to identify a single

instance in which any Defendant was enriched by an increase its sales or market share from the

allegedly unlawful conduct.

Moreover, Plumbers's long-standing knowledge of the nature of AWPs bars its unjust

enrichment claim.  Under the voluntary payment doctrine, which bars recovery "'[w]here . . . one

voluntarily and without fraud or duress pays money to another with full knowledge of the facts,"

Plumbers is precluded from recovering reimbursements it made knowing full well that published

AWPs were not actual averages of prices paid in the marketplace.  *Corporate Aviation Concepts,*

*Inc. v Multi-Serv. Aviation, Corp.*, Civ. A. No. 03-3020, 2005 WL 1693931, at *5 (E.D. Pa. July

19, 2005) (quoting *Acme Mkts., Inc. v. Valley View Shopping Ctr., Inc.*, 493 A.2d 736, 737 (Pa. Super. Ct. 1985)).[19]

**6.      Plumbers's Failure to Allege an Unlawful Agreement Among Defendants Is Fatal to Its Civil Conspiracy Claim**

Plumbers has failed to plead the most basic element of a civil conspiracy claim under Pennsylvania law: an unlawful agreement among Defendants.  *See Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008) (explaining that the first "essential" element of a civil conspiracy claim is "a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose").[20]

The Amended Complaint vaguely alleges that Defendants "entered into an agreement and/or otherwise engaged in a continuing conspiracy" at some unknown time "at least as early as 1991." Am. Compl. ¶ 610.  But the "mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the [pleading] requirements" for a civil conspiracy claim. *Loftus v. SEPTA*, 843 F. Supp. 981, 987 (E.D. Pa. 1994) (applying Pennsylvania law).  And Plumbers does not plead any specific facts "regarding the time, place, or conduct of the alleged conspiracy," all requisite to stating a claim for relief.  *Adams v. Teamsters Local 115*, 214 F. App'x 167, 176 (3d Cir. 2007) (applying Pennsylvania law); *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010) (applying Pennsylvania law) (where plaintiff "failed to allege except in general terms the approximate time when the agreement was made, the specific party to the agreement . . . the period of the conspiracy, or the

---

[19] Plumbers claims that "customers that purchase directly from Defendants at prices based on AWPs" (Am. Compl. ¶ 605) are entitled to some form of unjust enrichment disgorgement.  This allegation is both illogical and outside the proposed class definition.  Plaintiff's class definition itself specifically excludes any payor "with whom the defendants had direct contracts for defendants' generic drugs," making any such direct purchases irrelevant. Am. Compl. ¶ 444.  Moreover, a purchase directly from a Defendant by definition would be a purchase at that purchaser's cost and thus not "far in excess of true cost."

[20] Plumbers must also sufficiently allege an overt act done in pursuance of the common purpose and actual legal damage.  *See Phillips*, 959 A.2d at 437.

object of conspiracy," they had not created "plausible grounds to infer an agreement" under *Twombly*); *Slaybaugh v. Newman*, 479 A.2d 517, 519-20 (Pa. Super. Ct. 1984) (sustaining demurrer to civil conspiracy claim where plaintiffs "fail[ed] to establish how each individual allegation of fraud was part of a combination or agreement").

Plumbers's bald allegations of undescribed "[c]onspiratorial meetings, conferences, telephone and other communications" (Am. Compl. ¶ 613) are nothing more than the product of "subjective suspicions and unsupported speculation, which is insufficient to maintain a conspiracy claim." *Mincy v. Klem*, No. 1:08-cv-0066, 2011 U.S. Dist. LEXIS 23009, at *16 (M.D. Pa. Mar. 8, 2011) (applying Pennsylvania law). Absent any specific facts regarding which Defendants were involved in these alleged communications and where and when they may have taken place, the Amended Complaint fails to provide a basis for Plumbers's bare assertion that Defendants "discussed and agreed among themselves."[21]

## IV.   PLUMBERS'S TACKED-ON CLAIMS UNDER OTHER STATES' AND TERRITORIES' CONSUMER PROTECTION LAWS FAIL

Plumbers seeks to recover under the consumer protection laws of 48 additional states and two territories (Counts II and III). These claims fail not only for the reasons set forth above but also because Plumbers does not have standing to pursue claims predicated on the consumer protection laws of states in which it does not reside and was not injured. For these and other reasons explained below, Counts II and III should be dismissed.

---

[21] Plumbers's civil conspiracy claim makes a passing reference to "coordinated . . . generic pricing moves" (*see* Am. Compl. ¶ 611(c)), but the Amended Complaint does not include any supporting facts other than a few anecdotal allegations that certain subsets of Defendants raised prices for different generic drugs over a six month period nearly 25 years after the conspiracy is alleged to have begun. *See* Am. Compl. ¶¶ 21-25. Allegations that a fraction of manufacturers increased prices on a handful of generic drugs are not sufficient to plead an agreement among all Defendants to fraudulently inflate AWP or undertake any other illegal conduct. *See, e.g.*, *Petula v. Mellody*, 588 A.2d 103, 107 (Pa. Commw. Ct. 1991) (Parallel conduct "alone is insufficient to establish a civil conspiracy just as bald assertions thereof are insufficient."). Plumbers concedes that its allegation that these alleged increases were the product of coordination is not based on any facts or knowledge, but rather nothing more than a subjective "belief." Am. Compl. ¶ 25. Moreover, Plumbers has itself confirmed that it raises no antitrust claims based on a price-fixing conspiracy in this action. *See In re Generic Drug Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.) (Dkt  57).

A.    **Plumbers Lacks Standing to Assert Claims Under the Laws of States and Territories in Which It Neither Resides Nor Suffered an Injury**

In Count II, Plumbers seeks to bring claims on behalf of the membership of a non-party—DVHCC.[22]  Am. Compl. ¶ 468.  Nowhere does the Amended Complaint explain *who* DVHCC is or what relationship it has to this controversy.  Based on a previously filed complaint, DVHCC "is a coalition of union funds who negotiates prescription drug benefit contracts with pharmacy managers for use by its members."  Complaint, *Delaware Valley Health Care Coalition v. Actavis Grp.*, No. 00806 (Phil. Ct. Com. Pl. Feb. 4, 2016) (attached hereto as Exhibit I).  Although Plumbers is a member of DVHCC, the Amended Complaint fails to explain how this gives Plumbers any right to bring claims under the laws of the 12 states (and the District of Columbia) identified as "DVHCC Member States."[23]  Plumbers asserts no injury in or other connection to the DVHCC Member States and its residency and principal place of business are in Pennsylvania.  For this reason alone, Count II should be dismissed.

Similarly, in Count III, Plumbers invokes the consumer protection laws of 37 other jurisdictions to which Plumbers pleads no connection and in which Plumbers alleges no injuries.[24]  Plumbers alleges only that these jurisdictions have enacted consumer protection statutes that provide all "consumers a private right of action."  Am. Compl. ¶ 587.  As such, Plumbers suggests that unidentified members of the purported class may be present in those

---

[22] "DVHCC" presumably refers to the Delaware Valley Health Care Coalition, a third-party on whose behalf Plumbers's counsel initiated almost identical litigation against most of the same Defendants in Pennsylvania state court just five weeks after filing this action.  *See* Exhibit I.  On May 20, 2016, the state court stayed the case pending final disposition of the Plumbers Local Union 690 case pending in federal court.  *See* Order, *Delaware Valley Health Care Coalition v. Actavis Grp.*, No. 00806 (Phil. Ct. Com. Pl. May 20, 2016), attached hereto as Exhibit J.
[23] These "DVHCC Member States" allegedly include California, the District of Columbia, Delaware, Indiana, Kentucky, Maryland, Massachusetts, Michigan, New Jersey, New York, Ohio, West Virginia, and Wisconsin.  Am. Compl. ¶¶ 467-585.
[24] The 37 jurisdictions are as follows: Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisiana, Maine, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Hampshire, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wyoming.

jurisdictions and, therefore, includes the laws of those jurisdictions as claims for relief.  Am. Compl. ¶¶ 588(a)-(kk).

But the mere fact that virtually every U.S. state and territory has enacted a consumer protection law does not give Plumbers standing to assert claims predicated on an alleged injury of potential, yet-to-be-identified members of a putative class.  It is well-settled that the fact that "a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (alteration in original) (quotation omitted).  Courts in this District have found that, for purposes of standing, each claim a class representative seeks to advance "must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."  *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 692 (E.D. Pa. 2014) (internal quotations and citations omitted); *see also In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) ("Standing in the context of class actions remains a claim by claim prerequisite. . . . A named plaintiff whose injuries have no causal relation to, or cannot be redressed by, the legal basis for a claim does not have standing to assert that claim.").

Moreover, while class certification is "logically antecedent" to consideration of Article III standing when the standing of ***proposed class members*** is at issue, *see, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997), this rule does not apply where, as here, the issue is limited to the named plaintiff's standing.  *In re Wellbutrin*, 260 F.R.D. at 155; *see also U.S. ex rel. Krahling v. Merck & Co.,*

*Inc.*, 44 F. Supp. 3d 581, 600 (E.D. Pa. 2014).  This is because "[t]he initial inquiry . . . is whether the lead plaintiff individually has standing, not whether or not other class members have standing."  *Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007).  And "standing is not dispensed in gross"—that is, a plaintiff establishing standing as to one cause of action is not entitled to pursue all claims in his or her complaint.  *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 245 (3d Cir. 2012) (quoting *Lewis*, 518 U.S. at 358 n.6).  Rather, "a plaintiff who raises multiple causes of action 'must demonstrate standing for each claim he seeks to press.'"  *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

        To hold otherwise "would allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union" only to apply for class certification "proposing to represent the claims of parties whose injuries and modes of redress they would not share" at a later date and after a prolonged and expensive discovery process.  *In re Wellbutrin*, 260 F.R.D. at 155.  Indeed, permitting representatives of purported classes to broaden the scope of class certification discovery, thereby obscuring the legitimate scope of the litigation, merely by asserting the claims of others not before the court would be antithetical to the very purposes of Article III standing, the "gist" of which is to ensure that plaintiffs—whether representatives or not—"have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'"  *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2005) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

### B.    Plubers's Undifferentiated Pleading of Count III Is Insufficient

Plumbers's Count III simply lists 37 state consumer protection statutes. But pleading nothing more than a large list of statutes fails the pleading burden under Rules 8(a) and 9(b). That Plumbers could not be troubled to "elaborate[e] on how each of" the consumer protection laws of the 37 additional jurisdictions listed in Count III, "with their many variations, would apply to [their] factual allegations," *McCalley v. Samsung Elects. Am., Inc.*, Civ. No. 07-2141, 2008 WL 878402, at *9 (D.N.J. Mar. 31, 2008), serves only to highlight the impropriety of Plaintiffs' invocation of the laws of those jurisdictions.  "The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist."  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1999) (citation omitted).  Plumbers falls far short of this metric because it fails to identify *any* elements of the various jurisdictions' consumer protection causes of action, and instead merely cites to each state's consumer protection act.  In the case of Puerto Rico, Plumbers's pleading falls even flatter, asserting violation of unidentified "consumer protection laws."[25]  Am. Compl. ¶ 588(aa).

Courts routinely reject complaints that list state laws without pleading how elements of the laws are satisfied by alleged facts.  *See, e.g.*, *Aggrenox*, 94 F. Supp. 3d at 255 (dismissing state law claims because "indirect purchasers and Humana have *listed* claims under very many state laws, but they have not truly *pleaded* claims under those laws sufficient to show their entitlement to recovery under them"); *In re Actos End Payor Antitrust Litig.*, No. 13-CV-9244, 2015 WL 5610752, at *28 (S.D.N.Y. Sept. 22, 2015) (dismissing state consumer protection claims where "[p]laintiffs fail to account" for the differences in state consumer protection

---

[25] Presumably, Plumbers could not identify a statutory basis for its claim under Puerto Rico law because there is no such basis.  *See Simonet v. Smithkline Beecham Corp.*, 506 F. Supp. 2d 77, 90-91 (D.P.R. 2007)  ("Puerto Rico has no specific consumer protection statute that provides a private right of action for consumer fraud").  For this reason as well, Plumbers' claim under Puerto Rico "consumer protection laws" should be dismissed.

statutes in their complaint); *McCalley* 2008 WL 878402, at *9 (dismissing consumer protection claims because "Plaintiff fail[ed] to allege even the elements of the various statutes, or facts permitting this Court to draw inferences that the elements exist").  Such pleading gamesmanship has been rejected in this District in the past and should be rejected here.

C.   **Plumbers's Claims Under the Consumer Protection Laws of Other States and Territories Fail**

Plumbers's inattention to the nuances of the various states' and territories' consumer-protection laws is especially problematic because the laws vary significantly by state and may be violated in different states by different conduct.  Each state's consumer protection laws are unique.  *See, e.g.*, *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen Motors Corp.*, 172 F.3d 623 (8th Cir. 1999).  "[D]ifferent state consumer protection statutes contain not only nuances, but differing standards of proof, procedure, substance, and remedies."  *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 409 (S.D.N.Y 2011) (quotation omitted).  Plumbers, however, fails to address these differences, erroneously claiming that the statutes of the various states are "legally and substantively common," (Am. Compl. ¶ 470), and alleging largely the same elements in support of their claims under the consumer protection provisions of the thirteen DVHCC Member States. Plumbers's disregard of the important nuances of state consumer protection laws is fatal to Counts II and III.

For the state consumer protection statutes at issue in Count II, the differences are both procedural and substantive.  Some states, like Kentucky, prohibit class actions under their consumer protection laws.[26]  Such prohibitions on class actions under state consumer protection

---

[26] *See Arnold v. Microsoft Corp.*, 2000 WL 36114007, at *6 (Ky. Cir. Ct. 2000) ("The Court also does not believe that KRS 367.170 was meant to be a vehicle for Class action suits . . . ."), *aff'd*, 2001 WL 1835377, at *7-8 (Ky. Ct. App. Nov. 21, 2001).

laws "are 'intertwined' with the underlying substantive right[s]" those laws create.  *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 677 (E.D. Pa. 2010).  Allowing class actions in federal court under state consumer protection laws that prohibit such mass actions "would 'abridge, enlarge or modify' substantive rights" and, therefore, state consumer protection prohibitions on class actions "must be applied in federal court."  *Id.*  Still other states like Indiana, Massachusetts, and West Virginia require that plaintiffs comply with certain pre-suit procedural requirements before haling defendants into court.[27]  These requirements are necessary prerequisites to suit and "not merely . . . procedural nicet[ies]."  *E.g.*, *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004) (applying Massachusetts law); *Stanley v Huntington Nat'l Bank*, 492 F. App'x 456, 461 (4th Cir. 2012) ("Before a claim can be brought pursuant to the [West Virginia Consumer Credit and Protection Act], a plaintiff must comply with a mandatory condition precedent . . . ."); *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *9 (N.D. Cal. Mar. 12, 2014) (stating that a plaintiff must give the defendant notice of the alleged violation of the West Virginia statute prior to filing suit).

In addition, "[c]onsumer protection laws are a creature of the state in which they are fashioned" and represent the judgment of the various state legislatures whether or not to "impose liability" for certain conduct.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012).  Thus, some state consumer protection laws, like those of the District of Columbia, Maryland, Michigan, New Jersey, and Ohio (and others), either protect only consumers or are

---

[27] *See* Ind. Code § 24-5-0.5-5(a) ("No action may be brought under this chapter … unless (1) the deceptive act is incurable or (2) the consumer bringing the action shall have given notice in writing to the supplier" and stating that the notice "shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom . . . ."); Mass. Gen. Laws ch. 93A, § 9(3) ("At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent."); W. Va. Code § 46A-6-106(c) ("[N]o action . . . may be brought pursuant to the provisions of this section until the person has informed the seller or lessor in writing and by certified mail, return receipt requested, of the alleged violation . . . .").

directed only at consumer transactions.[28]  That a sophisticated commercial transaction allegedly

had an indirect impact on consumers does not bring otherwise uncovered transactions within the

purview of these states' consumer protection laws.  *See generally In re Auto. Refinishing Paint*

*Antitrust Litig.*, 515 F. Supp. 2d 544, 552 (E.D. Pa. 2007) (under New York's Deceptive Acts

and Practices Act, when an "alleged deceptive act occurs in a transaction between two

companies, even when the result of the deception impacts on a consumer, it is not actionable");

*In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319, 339 n.101 (S.D.N.Y. 2005) ("[N]or . . .

does the fact that consumers were the ultimate end-users convert the [upstream] transaction into

a consumer transaction" giving rise to liability).  Other state consumer protection laws, like those

of Delaware, Massachusetts, New York, and Ohio, are strictly limited in geographic reach,

applying only to in-state conduct.[29]  And still other consumer protection laws, like those of

---

[28] *See Ford v. ChartOne, Inc.*, 908 A.2d 72, 81 (D.C. 2006) ("a valid claim for relief under the CPPA must originate out of a consumer transaction."); *Price v. Ind. Fed. Savings Bank*, 110 A.3d 567, 574 (D.C. 2015) (CPPA limits plaintiffs to "'consumers,' defined as 'a person who, other than for purposes of resale, does or would purchase, lease (as lessee), or receive consumer goods or services….'" (quoting D.C. Code § 28-3901(a)(2)(A)); *Boatel Indus., Inc. v. Hester*, 550 A.2d 389, 398-99 (Md. Ct. App. 1988) (noting that "the purpose of the [CPA] as a whole is to protect the consumer . . . ." and finding that plaintiffs who are not "consumers" are "disqualified from recovering under [the CPA]"); *Nedschroef Detroit Corp. v. Bemas Enters. LLC*, 106 F. Supp. 3d 874, 887 (E.D. Mich. 2015) ("As the Michigan Supreme Court has recognized: 'the MCPA applies only to purchases by consumers and does not apply to purchases that are primarily for business purposes . . . if an item is purchased primarily for business or commercial rather than personal purposes, the MCPA does not supply protection.'") (quoting *Slobin v. Henry Ford Health Care*, 666 N.W. 2d 632, 634-35 (Mich. 2003) (internal quotations omitted); *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) ("[T]he CFA is not intended to cover every transaction that occurs in the marketplace[,] but, rather, [i]ts applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself.") (alterations in original) (quotations omitted)); *Ford Motor Credit Co. v. Ryan*, 939 N.E.2d 891, 918 (Ohio Ct. App. 2010) ("A consumer cannot recover under the CSPA unless he entered into a 'consumer transaction,' i.e., a purchase made for primarily for personal, family, or household purposes.").

[29] *See Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 633 (D. Del. 2007) (CPA "is limited to actions that take place within the State of Delaware"); Mass. Gen. Laws ch. 93A, § 11 (limiting claims to "actions and transactions" that "occurred ***primarily and substantially within the commonwealth***." (emphasis added)); N.Y. Gen. Bus. Law § 349 (limiting claims to "acts or practices" that took place "***in this state***" (emphasis added)); *Sheet Metal Workers Local 441 Health &Welfare Plan v. GlaxoSmithKline, plc*, 263 F.R.D. 205, 214 (E.D. Pa. 2009) ("Numerous courts have held that the deceptive conduct giving rise to the section 349 claim must have occurred in New York state."); *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 839 (S.D. Ohio 2003) (CPA "is only applicable if the offending conduct took place within the territorial borders of the state of Ohio").

California, Maryland, and Wisconsin, specify the elements that plaintiffs must plead to proceed under their consumer protection laws.[30]

As set out in Table A appended hereto, Plumbers fails to account for the differing standards, elements, and scope of the various state consumer protection laws under which they purport to seek relief and, therefore, their claims under those laws must be dismissed.

**D.      Plumbers's Consumer Protection Claims for Other States Are Barred by Applicable Statutes of Limitations**

Plumbers's claims for violations of consumer protection laws in Counts II and III of the Amended Complaint are barred by the relevant statutes of limitations for the same reasons as Plumbers's own claims.  Thirty states' laws have limitations periods equal to or shorter than the UTPCPL's six-year period.[31]  The applicable catch-all statutes of limitation in all but two of the remaining states are six years or shorter, and any claims arising under the laws of the other two states (Alaska and Ohio) fail for other reasons in any event.  The time-bar applies regardless of

---

[30] *See In re Tobacco Cases II*, 46 Cal. 4th 298, 306 (2009) (UCL class representative "***must demonstrate actual reliance*** on the allegedly deceptive or misleading statements") (emphasis added)); *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013) (MCPA plaintiff must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury;" misrepresentation must "substantially induce[] the consumer's choice." (quotation omitted) (citation omitted)); *Spacesaver Corp. v. The Marvel Grp., Inc.*, 621 F. Supp. 2d 659, 663 (D. Wis. 2009) (reliance under Wis. Stat. § 100.18 requires that "the representation . . . materially *induce[d] the plaintiff's decision to act*" and that "plaintiff would have acted in the absence of the representation." (emphasis and alterations in original)).

[31] Alabama (1 year after discovery, and no more than 4 years after the date of transaction, Ala. Code § 8-19-14); Arkansas (5 years, Ark. Code Ann. § 4-88-115); California (4 years, Cal. Bus. & Prof. Code § 17208); Colorado (3 years, Colo. Rev. Stat. § 6-1-115); Connecticut (3 years, Conn. Gen. Stat. § 42-110g(f)); District of Columbia (3 years, D.C. Code § 12-301(8)); Georgia (longer of either 2 years after plaintiff knew or should have known of occurrence or 2 years after termination of action brought by Attorney General, Ga. Code Ann. § 10-1-401); Hawaii (4 years, Haw. Rev. Stat. §480-24); Idaho (2 years, Idaho Code § 48-619); Illinois (3 years, 815 Ill. Comp. Stat. § 505/10a(3)(e)); Indiana (2 years, Ind. Code § 24-5-0.5-5(b)); Iowa (2 years, Iowa Code Ann. §714H.5(5)); Kentucky (1 year after any Attorney General action is terminated or 2 years, Ky. Rev. Stat. Ann. 367.220(5)); Louisiana (1 year, La. Stat. Ann. § 51:1409(E)); Massachusetts (4 years, Mass. Gen. Laws ch. 260, § 5A); Michigan (6 years, Mich. Comp. Laws § 445.911(7)); Nebraska (4 years, Neb. Rev. Stat. § 59-1612); New Hampshire (3 years, N.H. Rev. Stat. Ann. § 358-A:3(IV-a)); North Carolina (4 years, N.C. Gen. Stat. § 75-16.2); Oregon (1 year, Or. Rev. Stat. § 646.638(6)); South Carolina (3 years, S.C. Code Ann. § 39-5-150); South Dakota (4 years, S.D. Codified Laws § 37-24-33); Tennessee (1 year after discovery, and no more than 5 years after the date of transaction, Tenn. Code § 47-18-110); Texas (2 years, Tex. Bus. & Com. Code Ann. § 17.565); Utah (2 years, Utah Code Ann. § 13-11-19(8)); Virginia (2 years, Va. Code Ann. § 59.1-204.1(A)); Washington (4 years, Wash. Rev. Code § 19.86.120); Wisconsin (3 years, Wis. Stat. § 100.18(11)(b)(3)); Wyoming (later of 1 year after discovery or 2 years following the transaction, Wyo. Stat. Ann. § 40-12-109).

the applicable equitable tolling provisions in each state (which Plaintiff has also failed to plead at all, let alone with any degree of specificity) because Plumbers's undisputed involvement in the New Jersey AWP litigation precludes any claim of equitable tolling beyond July 2008, at the latest.

## V.   <u>PLUMBERS'S "FAIL SAFE" CLASS SHOULD BE DISMISSED</u>

Plumbers's failure to state any cognizable claim is dispositive and the Court need not reach the question of whether the class allegations are subject to dismissal on independent grounds.  But, should the Court reach the question, the Amended Complaint's class allegations should be dismissed or stricken.  District courts enjoy "broad discretion" to take such action, *EEOC v. Fedex Ground Package Sys., Inc.*, 158 F. Supp. 3d 393, 397 (W.D. Pa. 2016), "even before Plaintiffs move for class certification," *Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, 2015 WL 401443, at *2 (W.D. Pa. Jan. 28, 2015).

Plumbers has alleged a fail-safe class (Am. Compl. ¶ 441), *i.e.*, "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 825 (7th Cir. 2012).  But, as a matter of law,  a fail-safe class cannot survive Rule 23's "ascertainability" requirement.  *Zarichny v. Complete Payment Recovery Servs.*, 80 F. Supp. 3d 610, 625 (E.D. Pa. 2015) ("fail-safe classes are one category of classes failing to satisfy the ascertainability requirement" (quotations and alterations omitted)); *see also Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015) (recognizing that "ascertainability" is an "essential prerequisite" to the maintenance of a class action under Rule 23).  Under this requirement, the Court must satisfy itself that the class is "precisely defined with reference to objective criteria," *Bell*, 2015 WL 401443, at *3 (quotations omitted), and that there is "a reliable and administratively feasible mechanism for determining whether putative

class members fall within the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593-94 (3d Cir. 2012)).

Plumbers is incapable of fulfilling the ascertainability requirement because it alleges a class of "all natural persons and third party payors nationwide" who made "a payment" or "made reimbursements for defendants' generic drugs, *based on AWPs that were inflated*."  Am. Compl. ¶ 441.  This is a textbook fail-safe class: membership in Plumbers's proposed class turns on proof of liability, namely that Defendants "inflated" the AWPs of their drugs and that class members purchased drugs based on such inflated AWPs. "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner*, 669 F.3d at 825, *see also Bell*, 2015 WL 401443, at *4 (a fail-safe class requires the court to "conduct mini-hearings in order to determine who belongs within the class and who does not, rendering the process administratively infeasible and therefore unascertainable."); *Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 317 (D. Del. 2012) ("[D]efining a class to consist of solely those who have certainly suffered injury is forbidden."); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) (class allegation is untenable if determining class membership "requires addressing the central issue of liability to be decided in the case").[32]

Here, determining who is in the class would impermissibly require "extensive and individualized fact-finding," *Marcus*, 687 F.3d at 593, on whether Defendants artificially inflated benchmarks labeled "AWP" on each relevant drug during the expansive 25-year class period and

---

[32] *Accord Kline v. Sec. Guards, Inc.*, 196 F.R.D. 261, 267-68 (E.D. Pa. 2000) (rejecting fail-safe class definition); *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. 2015); *Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 880 (N.D. Ill. 2014) (same); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014) (same); *Bauer v. Dean Morris, L.L.P*, Civ. A. No. 08-5014, 2011 WL 3924963, at *3, *8 (E.D. La. Sept. 7, 2011) (same); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1166-67 (N.D. Cal. 2008) (same).

whether each putative class member purchased those drugs based upon inflated AWPs. *See, e.g.*, *Kondratick v. Beneficial Consumer Discount Co.*, No. 04-4895, 2006 WL 305399, at *10 (E.D. Pa. Feb. 8, 2006) ("[B]ecause mini-hearings on the merits are required here to determine class membership, this class definition is untenable and cannot be certified.").

Further, absent extensive fact finding, there would be no way to provide adequate notice to the putative class because there is no way to determine who is a member. *See, e.g.*, *Zarichny*, 80 F. Supp. 3d at 625-26. Indeed, where, as here, "the class definition is based on a merits determination, prospective plaintiffs may not recognize that they are in the class, and may be deprived of the opportunity to object or opt out." *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 479 (D.N.J. 2009), *abrogated on other grounds by Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202 (3d Cir. 2013).

Finally, Plumbers's proposed fail-safe class puts Defendants in a position where any victory in this case would be hollow, "rais[ing] an obvious fairness problem." *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015).  This is because the class definition makes it "virtually impossible for the Defendants to ever 'win' the case, with the intended class preclusive effects." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 n.19 (1st Cir. 2015) (quotations omitted).  Specifically, Plumbers's class definition "would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (quotations omitted); *see also, e.g.*, *Zarichny*, 80 F. Supp. 3d at 624 ("such a class impermissibly skirts the bar of *res judicata*").

At bottom, "class treatment is evidently inappropriate from the face of the complaint" and "no amount of discovery or time will allow [Plumbers] to resolve deficiencies in class definitions

under Rule 23." *Zarichny*, 80 F. Supp. 3d at 615 (quotations omitted).  Thus, even if the

complaint stated a viable claim (which it does not), this case could not proceed as a class action

as a matter of law.  The class allegations should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court dismiss

the Amended Complaint with prejudice, and issue such other relief as this Court deems just and

appropriate.

Dated:  January 18, 2017

Respectfully submitted,

By:_____/s/ Joseph E. O'Neil_____
    Joseph E. O'Neil (PA 29053)
    LAVIN O'NEIL CEDRONE & DISIPIO
    190 North Independence Mall West, Suite 500
    Philadelphia, PA 19106

    Heather K. McDevitt (*pro hac vice*)
    Michael J. Gallagher (*pro hac vice*)
    Joshua D. Weedman (*pro hac vice*)
    WHITE & CASE LLP
    1155 Avenue of the Americas
    New York, NY 10036

    *Counsel for Defendant Sandoz Inc. and EON Labs, Inc.*

By:_____/s/ William M. Connolly_____
    William M. Connolly
    Chanda A. Miller
    DRINKER BIDDLE & REATH LLP
    One Logan Square, Ste. 2000
    Philadelphia, PA 19103

    Stephen D. Brody (*pro hac vice*)
    O'MELVENY &MYERS LLP
    1625 Eye Street, N.W.
    Washington, DC 20006

    *Counsel for Defendant Par*

*Pharmaceuticals Companies, Inc., Par Pharmaceutical, Inc. and Generics International (US) Inc. (and specially appearing for Defendants Qualitest, Strativa Pharmaceuticals, Boca Pharmacal, and Endo Pharmaceutical, Inc. without waiver of their motion to dismiss due to insufficient service of process)*


By:    /s/ Jan P. Levine
      Jan P. Levine
      Michael J. Hartman
      Logan Anderson
      PEPPER HAMILTON LLP
      3000 Two Logan Square
      Eighteenth and Arch Streets
      Philadelphia, PA 19103-2799

      Jeffrey A. Carr
      PEPPER HAMILTON LLP
      Suite 400
      301 Carnegie Center
      Princeton, NJ 08543-5276

      *Counsel for Defendant West-Ward Pharmaceuticals, Corp.*


By:    /s/ Daniel E. Rhynhart
      Daniel E. Rhynhart
      Michael A. Iannucci
      BLANK ROME LLP
      One Logan Square
      130 North 18th Street
      Philadelphia, PA  19103-6998

      David C. Kistler
      BLANK ROME LLP
      301 Carnegie Center, Third Floor
      Princeton, NJ 08540

      D. Jarrett Arp
      Melanie L. Katsur
      William Jeremy Robison
      GIBSON DUNN & CRUTCHER LLP

1050 Connecticut Avenue NW, Suite 200
Washington, DC 20036

*Counsel for Defendant Heritage*
*Pharmaceuticals Inc.*


By:____/s/ Joseph Wolfson_____
     Joseph Wolfson
     Larry J. Rappoport
     Nicholas H. Pennington
     STEVENS & LEE
     620 Freedom Business Center
     Suite 200
     King of Prussia, PA 19406

     J.P. Ellison (*pro hac vice*)
     Jennifer M. Thomas (*pro hac vice*)
     HYMAN PHELPS & McNAMARA, P.C.
     700 13th Street, NW
     Washington, DC 20005

     *Counsel for Defendants Mutual*
     *Pharmaceutical Co. and Sun*
     *Pharmaceutical Industries, Inc.*


By:____/s/ Joseph Wolfson_____
     Joseph Wolfson
     STEVENS & LEE
     620 Freedom Business Center
     Suite 200
     King of Prussia, PA 19406

     Jennifer Levy (*pro hac vice*)
     Jason Parish (*pro hac vice*)
     Timothy Geverd (*pro hac vice*
     forthcoming)
     KIRKLAND & ELLIS LLP
     655 Fifteenth Street, NW
     Washington, DC 20005

     *Counsel for Defendant Zydus*
     *Pharmaceuticals (USA), Inc.*

By:   /s/ Joseph Wolfson
     Joseph Wolfson
     STEVENS & LEE
     620 Freedom Business Center
     Suite 200
     King of Prussia, PA 19406

     Jennifer Levy (*pro hac vice*)
     Jason Parish (*pro hac vice*)
     Timothy Geverd (*pro hac vice*
     forthcoming)
     KIRKLAND & ELLIS LLP
     655 Fifteenth Street, NW
     Washington, DC 20005

     *Counsel for Defendants Teva*
     *Pharmaceutical Industries Ltd., Teva*
     *Pharmaceuticals USA, Inc., Novopharm*
     *Holdings, Inc., Teva Neuroscience, Inc.*
     *Teva Respiratory, LLC, Teva Women's*
     *Health, Inc., Copley Pharmaceutical, Inc.,*
     *Barr Laboratories, Inc., Barr*
     *Pharmaceuticals, LLC, IVAX LLC, IVAX*
     *Pharmaceuticals, LLC, and Sicor Inc.*


By:   /s/ Joseph Wolfson
     Joseph Wolfson
     Larry J. Rappoport
     Nicholas H. Pennington
     STEVENS & LEE
     620 Freedom Business Center
     Suite 200
     King of Prussia, PA 19406

     Graciela M. Rodriguez (*pro hac vice*)
     Nikesh Jindal (*pro hac vice*)
     KING & SPALDING LLP
     1700 Pennsylvania Avenue, N.W.
     Washington, D.C. 20006

     *Counsel for Defendant Impax Laboratories,*
     *Inc.*

By:   /s/ James W. Matthews
      James W. Matthews (*pro hac vice*)
      Katy E. Koski (*pro hac vice*)
      John F. Nagle (*pro hac vice*)
      FOLEY & LARDNER LLP
      111 Huntington Avenue
      Suite 2500
      Boston, MA 02199-7610

      Terry M. Henry
      Ann E. Querns
      BLANK ROME LLP
      One Logan Square
      130 North 18th Street
      Philadelphia, PA 19103

      *Attorneys for Apotex Corp., Actavis Inc. f/k/a Watson Pharmaceuticals, Inc. and n/k/a Allergan Finance LLC, Actavis Elizabeth LLC, Actavis Kadian LLC, Actavis Mid Atlantic LLC, Actavis South Atlantic LLC, Actavis Totowa LLC, Forest Laboratories LLC f/k/a Forest Laboratories, Inc., Forest Pharmaceuticals, Inc., Inwood Laboratories, Inc. Watson Pharma, Inc., f/k/a Schein Pharmaceutical, Inc. and n/k/a Actavis Pharma, Inc. Watson Laboratories, Inc. and Andrx LLC f/k/a Andrx Corporation*

By:   /s/ Beth L. Weisser
      Beth L. Weisser
      FOX ROTHSCHILD LLP
      2000 Market Street, 20th Floor
      Philadelphia, PA 19103

      Philip D. Robben (*pro hac vice*)
      Melissa E. Byroade (*pro hac vice*)
      KELLEY DRYE & WARREN LLP
      101 Park Avenue
      New York, NY 10178

*Counsel for Defendant Dr. Reddy's Laboratories Limited*

By:    /s/ Michael K. Twersky     
    Michael K. Twersky
    Samuel S. Dalke
    FOX ROTHSCHILD LLP
    2000 Market Street, 20th Floor
    Philadelphia, PA 19103

    *Counsel for Defendant Lannett Company, Inc.*

By:    /s/ Rachel B. Weil     
    Rachel B. Weil
    Michael T. Scott
    REED SMITH LLP
    1717 Arch Street
    Three Logan Square
    Philadelphia, PA 19102

    Clifford Katz
    William A. Escobar
    KELLEY DRYE & WARREN LLP
    101 Park Avenue
    New York, NY 10178

    *Counsel for Defendants Mylan Laboratories, Inc., Mylan Pharmaceuticals, Inc., UDL Laboratories, Inc. and Mylan Technologies, Inc.*

# Table A

**Reasons for Dismissal and Authority**

**ALABAMA. Reasons for Dismissal:** Class actions prohibited; pre-suit notice required

**Class Actions**: Ala. Code § 8-19-10(f) ("A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class."); *Ex parte Exxon Corp.*, 725 So.2d 930, 933 (Ala. 1998) ("Alabama law does not allow consumers to bring class actions based on deceptive trade practices.").

**Pre-Suit Notice:** Ala. Code § 8-19-10(e) ("At least 15 days prior to the filing of any action under this section, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be communicated to any prospective respondent by placing in the United States mail or otherwise.")

**ALASKA. Reasons for Dismissal:** Class actions prohibited

**Class Actions**: Alaska Stat. § 45.50.531(b) (repealed provision that had allowed class actions); *In re Pharm Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005) ("Under the laws of . . . Alaska . . . there is no right to bring a class action to enforce the consumer protection statute.")

**ARIZONA. Reasons for Dismissal:** In-state conduct required; inadequately pled

**In-State Conduct:** *State ex rel. Corbin v. Goodrich*, 726 P.2d 215, 221 (Ariz. Ct. App. 1986) (limiting Arizona Consumer Fraud Act to "acts committed within Arizona in violation of its provisions.").

**Inadequately Pled:** *Peterson v. Am. Express*, 2016 WL 1158881, at *30 (D. Ariz. March 23, 2016) (reliance is an element of a claim brought under the Arizona Consumer Fraud Act); *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. Feb. 11, 2016) ("A misrepresentation causes injury where the consumer actually relies on it[.]")

**CALIFORNIA. Reasons for Dismissal:** Inadequately pled (standing)

*In re Tobacco Cases II*, 46 Cal. 4th 298, 306 (2009) (observing that the "standing requirements" of California's Unfair Competition Law require "a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action, *must demonstrate actual reliance* on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." (emphasis added)).

**COLORADO. Reasons for Dismissal:** Inadequately pled

*Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1142 (D. Colo. 2013) (CPA requires that plaintiffs plead "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business . . . ; (3) that it significant**y** impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused plaintiff's injury." (alteration in original) (citation omitted)).

**CONNECTICUT. Reasons for Dismissal:** Class actions prohibited (in these circumstances); in-state conduct required

**Class Actions:** "Connecticut General Statutes Section 42-110g(b) . . . limits [plaintiffs'] standing to raise a claim on behalf of a class, stating that: '[p]ersons entitled to bring an action under subsection(a) of this section may . . . bring a class action on behalf of themselves and other persons similarly situated who are residents of this state or injured in this state to recover damages.'" *Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 505 (D. Conn. 2015) (quoting Conn. Gen. Stat. § 42-110g(b)). Plaintiff is not a Connecticut resident and has not alleged that its alleged injuries occurred in Connecticut; therefore, Plaintiff "'may not bring a class action because [Plaintiff] could not be representative of class members with the statutorily required in-state residency or injury characteristics.'" *Id.*

**In-State Conduct:** Conn. Gen. Stat. § 42-110a(4) (defining "trade" and "commerce" actionable under the CTPA as limited to a set of specified conduct "*in this* state." (emphasis added)).

**DELAWARE. Reasons for Dismissal:** In-state conduct required

*Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 633 (D. Del. 2007) (finding that the CPA "is limited to actions that take place within the State of Delaware.").

**DISTRICT OF COLUMBIA. Reasons for Dismissal:** Consumer nexus required

*Ford v. ChartOne, Inc.*, 908 A.2d 72, 81 (D.C. 2006) (CPPA claim "must originate out of a consumer transaction."); *Price v. Ind. Fed. Savings Bank*, 110 A.3d 567, 574 (D.C. 2015).

**FLORIDA. Reasons for Dismissal:** In-state conduct required

*Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc.*, 167 F. Supp. 3d 1311, 1323 (S.D. Fla. 2016) ("The [Florida Deceptive and Unfair Trade Practices Act] protects non-Florida consumers only when the alleged wrongful conduct occurred within the State of Florida."); *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012) ("FDUPTA applies only to actions that occurred within the state of Florida").

**GEORGIA. Reasons for Dismissal:** Class actions prohibited; pre-suit notice required; consumer nexus required; inadequately pled

**Class Actions:** Ga. Code § 10-1-399(a) (action may be brought "individually, but not in a representative capacity, against" defendant); *Friedlander v. PDK Labs, Inc.*, 465 S.E.2d 670, 671 (Ga. 1996) (same).

**Pre-Suit Notice:** Ga. Code § 10-1-399(b) ("At least 30 days prior to the filing of any such action, a written demand for relief . . . shall be delivered to any prospective respondent.")

**Consumer Nexus:** *Friedlander v. PDK Labs, Inc.*, 465 S.E.2d 670, 671 (Ga. 1996) (An "FBPA [suit] must be brought in the plaintiff's capacity as an individual member of the consuming public. . ..") (internal quotations and citations omitted).

**Inadequately Pled:** *Lynas v. Williams*, 454 S.E.2d 570, 574 (Ga. App. 1995) (FBPA "incorporates the 'reliance' element of the common law tort of misrepresentation" making justifiable reliance "an essential element.").

**HAWAII. Reasons for Dismissal:** Consumer nexus required

*Sea-Land Serv., Inc. v. Atl. Pac. Int'l, Inc.*, 61 F. Supp. 2d 1092, 1097 (D. Haw. 1999) ("Only 'consumers' may maintain a private action under [H.R.S. § 480-2]. A 'consumer' is defined as 'a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment.).

**IDAHO. Reasons for Dismissal:** Consumer nexus required; in-state conduct required; inadequately pled

**Consumer Nexus:** *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010) ("In order to have standing under the Idaho Consumer Protection Act [], the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively.").

**In-State Conduct:** *Mortensen v. Mortg. Elec. Registration Sys., Inc.*, No. 1:10-cv-02012, WL 4482040, at *13 (D. Idaho Aug. 24, 2012) ("The ICPA prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce within the State of Idaho.").

**Inadequately Pled:** "[T]he ICPA only permits recovery for certain specific prohibited actions that are deemed to be unfair or deceptive" and Plaintiffs' complaint fails "to allege which specific prohibited unfair or deceptive practice [Defendants] are meant to have engaged in." *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010); *see also Bacon v. Countrywide Bank FSB*, No. 2:11-cv-00107, 2012 WL 642658, at *7 (D. Idaho Feb. 8, 2012) (conduct "must fall within one of the [Deceptive Trade Practices Act's] nineteen subsections.").

**ILLINOIS. Reasons for Dismissal:** Consumer nexus required; in-state conduct required

**Consumer Nexus:** *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 777 (N.D. Ill. 2008) ("[I]n order to state a claim under the Consumer Fraud Act, the plaintiff must either allege it was a consumer of the defendant *or* allege a nexus with Illinois consumers.") (internal quotations and citations omitted).

**In-State Conduct:** *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 407 (Ill. Ct. App. 2008) ("The Consumer Fraud Act is a statute without extraterritorial effect; '[t]he [Illinois] General Assembly did not intend the . . . Act to apply

to fraudulent transactions that take place outside of Illinois.'" (alterations in original).

**INDIANA. Reasons for Dismissal:** Pre-suit notice required

Ind. Code § 24-5-0.5-5(a) (claim not permitted "unless (1) the deceptive act is incurable or (2) the consumer bringing the action shall have given notice in writing to the supplier" and stating that the notice "shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom. . .").

**IOWA. Reasons for Dismissal:** Class actions (in these circumstances) prohibited; consumer nexus required

**Class Actions:** "A class action lawsuit alleging a violation of this chapter shall not be filed with a court unless it has been approved by the attorney general." Iowa Code Ann. § 714H.7.

**Consumer Nexus:** Iowa Code § 714H.5(1) ("A consumer who suffers an ascertainable loss of money or property as the result of a prohibited practice or act in violation of this chapter may bring an action at law to recover actual damages."); *id*. § 714H.2(1) (limiting the definition of a "consumer" to "a natural person or the person's legal representative.").

**KANSAS. Reasons for Dismissal:** Class actions prohibited; consumer nexus required

**Class Actions:** Kan. Stat. § 50-634(b) ("A consumer who is aggrieved by a violation of this act may recover, but not in a class action, damages or a civil penalty. . ..").

**Consumer Nexus:** *Kestrel Holdings, L.L.C. v. Learjet Inc.*, 316 F. Supp. 2d 1071, 1076-77 (D. Kansas 2004) ("Kan. Stat. Ann. § 50-624(b) limits the definition of 'consumers' under the KCPA to 'individuals' and 'sole proprietors.' Thus, a corporation or similar entity that has suffered an injury as a result of a 'deceptive' or 'unconscionable' act or practice cannot assert a claim under the KCPA.").

**KENTUCKY. Reasons for Dismissal:** Class actions prohibited; consumer nexus required

**Class Actions:** *Arnold v. Microsoft Corp.*, 2000 WL 36114007, at *6 (Ky. Cir. Ct. 2000) ("The Court also does not believe that KRS 367.170 was meant to be a vehicle for Class action suits. . .."), *aff'd*, 2001 WL 1835377, at *7-8 (Ky. Ct. App. Nov. 21, 2001) (observing that, in order "[t]o maintain an action alleging a violation of the [Kentucky Consumer Protection] Act, . . . an individual must fit within the proctected class of persons defined in KRS 367.220.").

**Consumer Nexus:** The Kentucky Consumer Protection Act provides a private right of action only for persons "who purchase[] or lease[] goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property . . . as a result" of an unlawful practice. Ky. Rev. Stat. § 367.220(1); S*kilcraft Sheetmetal, Inc. v. Ky. Machinery, Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992).

**LOUISIANA. Reasons for Dismissal:** Class actions prohibited; consumer nexus required

**Class Actions:** La. Rev. Stat. § 51:1409(A) ("Any person who suffers any ascertainable loss . . . may bring an action individually but not in a representative capacity to recover actual damages.").

**Consumer Nexus:** *Tessier v. Moffatt*, 93 F. Supp. 2d 729, 734 (E.D. La. 1998) ("To have standing under [the Louisiana Unfair Trade Practices and Consumer Protection Act] the plaintiffs must demonstrate that they are consumers or business competitors.").

**MAINE. Reasons for Dismissal:** Pre-suit notice required; consumer nexus required

**Pre-Suit Notice:** Me. Rev. Stat. tit. 5, § 213(1-A) ("At least 30 days prior to the filing of an action for damages, a written demand for relief, identifying the claimant and reasonable describing the unfair and deceptive act or practice relied upon and the injuries suffered, must be mailed or delivered to any prospective respondent at the respondent's last known address.").

**Consumer Nexus:** Me. Rev. Stat. tit. 5, § 213(1) (limiting a private right of action to "[a]ny person who purchases or leases goods, services or property . . . primarily for personal, family, or household purposes and thereby suffers any loss of money or property. . .."); *Enercon v. Global Computer Supplies, Inc.*, 675 F. Supp. 2d 188, 193 (D. Me. 2009) (applying limitation).

**MARYLAND. Reasons for Dismissal:** Consumer nexus required; inadequately pled

**Consumer Nexus:** *Boatel Indus., Inc. v. Hester*, 550 A.2d 389, 399 (Md. Ct. App. 1988) (noting that "the purpose of the [CPA] as a whole is to protect the consumer. . .." and finding that plaintiffs who are not "consumers" are "disqualified from recovering under [the CPA]").

**Inadequately Pled:** *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013) ("To state a claim under the MCPA, plaintiffs must adequately allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury. . . . A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice.").

**MASSACHUSETTS. Reasons for Dismissal:** Pre-suit notice required; in-state conduct required

**Pre-Suit Notice:** Mass. Gen. Laws ch. 93A, § 9(3) ("At least thirty days prior to the filing of any such action, a written demand for relief . . . shall be mailed or delivered to any prospective respondent.").

**In-State Conduct:** Mass. Gen. Laws ch. 93A, § 11 ("No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive practice occurred *primarily and substantially within the commonwealth*." (emphasis added)).

**MICHIGAN. Reasons for Dismissal:** Consumer nexus required

*Nedschroef Detroit Corp. v. Bemas Enters. LLC*, 106 F. Supp. 3d 874, 887 (E.D. Mich. 2015) ("[T]he MCPA applies only to purchases by consumers and does not apply to purchases that are primarily for business purposes . . . if an item is purchased primarily for business or commercial rather than personal purposes, the MCPA does not supply protection.") (internal quotations and citations omitted).

**MINNESOTA. Reasons for Dismissal:** Inadequately pled

"[I]n order to obtain monetary remedies under the MCFA, a private party must show the requisite type of action and injury and that the action will benefit the public." *Baker v. Best Buy Stores, LP*, 812 N.W.2d 177, 183 (Minn. Ct. App. 2012). But Plumbers's "complaint is devoid of any allegations that the complaint was brought for the 'public benefit' or how their action benefits the public." *Id.*

**MISSISSIPPI. Reasons for Dismissal:** Class actions prohibited; Pre-suit notice and settlement program participation required; consumer nexus required

**Class Actions:** Miss. Code § 75-24-15(1) ("Nothing in this chapter shall be construed to permit any class action or suit, but every private action must be maintained in the name of and for the sole use and benefit of the individual person.").

**Pre-Suit Notice:** Miss. Code § 75-24-15(2) (Private plaintiff "must have first made a reasonable attempt to resolve any claim through an informal settlement program approved by the Attorney General."); *Wilson v. New Palace Casino, LLC*, Civ. No. 1:11cv447-HSO-JMR, 2013 WL 870350, at *12 (S.D. Miss. Mar. 7, 2013) ("[F]ailure to satisfy the prerequisite of an attempt at informal dispute resolution is fatal to a MCPA claim.").

**Consumer Nexus:** Miss. Code § 75-24-15 (Mississippi Consumer Protection Act claims limited to "any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property. . . .").

**MISSOURI. Reasons for Dismissal:** Consumer nexus required

V.A.M.S. § 407.025(1) ("Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful . . . may bring a private civil action . . . .").

**MONTANA. Reasons for Dismissal:** Class actions prohibited; consumer nexus required

**Class Actions:** Mont. Code § 30-14-133(1) ("A consumer who suffers any ascertainable loss of money or property . . . may bring an individual but not a class action. . . .").

**Consumer Nexus:** Mont. Code Ann. § 30-14-133(1) (providing a private right of action for any "consumer who suffers any ascertainable loss . . . as a result of the use or employment by another person of a method, act, or

-4-

practice declared unlawful."); Mont. Code Ann. § 30-14-102(1) ("[c]onsumer' means a person who purchases or leases goods . . . primarily for personal, family, or household purposes."); *Doll v. Major Muffler Ctrs., Inc.*, 687 P.2d 48, 52-53 (Mont. 1984) (applying limitation)

**NEBRASKA. Reasons for Dismissal:** In-state conduct required

*Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 141-42 (Neb. 2000) (alleged deceptive practice under CPA must "'directly or indirectly affect[] the people of the State of Nebraska.'" (quoting Neb. Rev. Stat. § 59-1601(2)); *see also Infogroup, Inc. v. DatabaseLLC*, 95 F. Supp. 3d 1170, 1184 n.11 (D. Neb. 2015) (observing that the CPA "is limited to unfair or deceptive practices that affect the public interest[;] [s]pecifically, the conduct at issue must affect numerous citizens of Nebraska").

**NEW HAMPSHIRE. Reasons for Dismissal:** In-state conduct required

N.H. Rev. Stat. § 358-A:2 (limiting claims to those that occur in the conduct of any trade or commerce *within this state*." (emphasis added); *Mueller Co. v. U.S. Pipe & Foundry Co.*, Civ. No. 03-170-JD, 2003 WL 22272135, at *6 (D.N.H. Oct. 2, 2003) (dismissing claim because "commercial conduct which affects the people of New Hampshire is actionable under 358-A:2 only if it occurs within New Hampshire").

**NEW JERSEY. Reasons for Dismissal:** Consumer nexus required

*Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) ("[T]he CFA . . . is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself.")

**NEW MEXICO. Reasons for Dismissal:** Consumer nexus required

*Williams v. Foremost Ins. Co.*, 102 F. Supp. 3d 1230, 1240 (D.N.M. 2015) (UPA claims limited "to actual consumers of goods and services"; non-consumer third-party claimant lacks standing).

**NEW YORK. Reasons for Dismissal:** Consumer nexus required; in-state conduct required

**Consumer Nexus:** *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995) (Plaintiff under section 349 "must charge conduct . . . that is consumer-oriented.").

**In-State Conduct:** N.Y. Gen. Bus. Law § 349 (limited to "acts or practices" in "business, trade or commerce or in the furnishing of any service *in this state*") (emphasis added)); *Sheet Metal Workers Loc. 441 Health &Welfare Plan v. GlaxoSmithKline, plc*, 263 F.R.D. 205, 214 (E.D. Pa. 2009) ("deceptive conduct . . . must have occurred in New York State.")

**NORTH CAROLINA. Reasons for Dismissal:** Consumer nexus required; inadequately pled

**Consumer Nexus:** *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 519-20 (4th Cir. 1999) (North Carolina's Unfair Trade Practices Act limits "private cause[s] of action to consumers" and allows businesses to assert a claim against another business "*only* when the businesses are competitors (or potential competitors) or are engaged in commercial dealings with each other.") (emphasis added).

**Inadequately Pled:** *Bumpers v. Cmty. Bank of N. Virginia*, 747 S.E.2d 220, 226-27 (N.C. 2013) (requiring actual and reasonable reliance as elements of a claim under N.C.G.S.A. § 75-1.1).

**OHIO. Reasons for Dismissal:** Consumer nexus required; In-state conduct required

**Consumer Nexus:** *Ford Motor Credit Co. v. Ryan*, 939 N.E.2d 891, 918 (Ohio Ct. App. 2010) ("A consumer cannot recover under the CSPA unless he entered into a 'consumer transaction,' i.e., a purchase made for primarily for personal, family, or household purposes." (alteration omitted)).

**In-State Conduct:** *Johnson v. Jos. A. Bank Clothiers, Inc.*, No. 2:13-cv-756, 2014 U.S. Dist. LEXIS 2040, at *29 (S.D. Ohio Jan. 8, 2014) (CPA "is only applicable if the offending conduct took place within the territorial borders of the state of Ohio") (quoting *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 839 (S.D. Ohio 2003)).

**OKLAHOMA. Reasons for Dismissal:** Consumer nexus required

*Murray v. D&J Motor Co.*, 958 P.2d 823, 832 (Okla. Civ. App. 1998) (Oklahoma Consumer Protection Act suit no proper unless the plaintiff "is a consumer and a consumer transaction is involved. . ..").

**OREGON. Reasons for Dismissal:** Consumer nexus required

*Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 22 F. Supp. 3d 1126, 1135-37 (D. Or. 2014) (Unfair Trade Practices Act plaintiff must be a "consumer of defendants' products" to have standing).

**PUERTO RICO. Reasons for Dismissal:** No consumer protection cause of action

*Simonet v. Smithkline Beecham Corp.*, 506 F. Supp. 2d 77, 90-91 (D.P.R. 2007) ("Puerto Rico has no specific consumer protection statute that provides a private right of action for consumer fraud").

**RHODE ISLAND. Reasons for Dismissal:** Consumer nexus required

*Magnum Defense, Inc. v. Harbour Grp. Ltd.*, 248 F. Supp. 2d 64, 71 (D.R.I. 2003) (standing limited to "any person who purchases or leases goods or services primarily for personal, family, or household purposes.").

**SOUTH CAROLINA. Reasons for Dismissal:** Class actions prohibited

S.C. Code § 39-5-140(a) ("Any person who suffers any ascertainable loss . . . may bring an action individually, but not in a representative capacity, to recover actual damages."); *Harris v. Sand Canyon Corp.*, No. 08-CV-3692-PMD, 2010 U.S. Dist. LEXIS 74228, at *23-24 (D.S.C. July 22, 2010) ("It seems clear from the language of SCUTPA that class actions are forbidden under the Act.").

**TENNESSEE. Reasons for Dismissal:** Class actions prohibited

Tenn. Code § 47-18-109(g) ("No class action lawsuit may be brought to recover damages for an unfair or deceptive act or practice declared to be unlawful by this part.").

**TEXAS. Reasons for Dismissal:** Pre-suit notice required; consumer nexus required

**Pre-Suit Notice:** Tex. Bus. & Comm. Code § 17.505(a) ("As a prerequisite to filing a suit seeking damages under [the Texas Deceptive Trade Practices Act], against any person, a consumer shall give written notice to the person at least 60 days before filing . . . "); *Boyd Int'l, Ltd. v. Honeywell, Inc.*, 837 F.2d 1312, 1315 (5th Cir. 1988) (observing that "the primary purpose of the DTPA notice requirement is to discourage litigation and encourage settlement" and where "no notice . . . [is] given before suit [is] filed[,] . . . [a] "DTPA judgment . . . cannot stand.").

**Consumer Nexus:** *Cook-Pizzi v. Van Waters & Rogers, Inc.* 94 S.W.3d 636, 644 (Tex. Ct. App. 2002) (for standing, plaintiffs "must demonstrate that [they are] consumer[s] of the goods or services of [Defendants] . . ., that [they] acquired the goods or services by purchase or lease, and that the goods or services form the basis of their complaint. . ..[T]he transaction must be specifically required by or intended to benefit the party claiming consumer status.").

**UTAH. Reasons for Dismissal:** Class actions prohibited; consumer nexus required

**Class Actions:** Utah Code § 13-11-19(2) ("A consumer who suffers a loss as a result of a violation of this chapter may recover, but not in a class action, actual damages. . ..").

**Consumer Nexus:** *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1241 (10th Cir. 2013) ("consumer transaction" defined as "a sale . . . of goods . . . to, or apparently to, a person for . . . primarily personal, family, or household purposes").

**VERMONT. Reasons for Dismissal:** Consumer nexus required

*Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 671 (D. Vt. 2012) ("A well-pleaded [Vermont Consumer Fraud Act] claim must allege that (1) defendants misrepresented or omitted information in a manner likely to mislead *consumers*; (2) the *consumers* interpreted the message reasonably under the circumstances; and (3) the misleading representation was material in that it affected the *consumers* purchasing decision.") (emphasis added); *Ianelli v. U.S. Bank*, 996 A.2d 722, 726 (Vt. 2010) (To prove a deceptive act or practice, plaintiffs must establish "there was a representation, practice, or omission by [defendant] that was likely to mislead *consumers*.") (emphasis added).

**VIRGINIA. Reasons for Dismissal:** Class actions prohibited; inadequately pled

**Class Actions:** *Commonwealth v. Supportkids, Inc.*, 77 Va. Cir. 155, 160 (Cir. Ct. 2008) ("Virginia is not a class action state."); *Am. Online, Inv. v. Sup. Ct.*, 108 Cal. Rptr. 2d 699, 711 (Ct. App. 2001) (no CPA provision that permits class actions; "[u]nless specifically allowed by statute, class action relief is not generally available in Virginia in actions at law.").

**Inadequately Pled:** *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 658 (W.D. Va. 2013) ("reliance" required for CPA claim).

**WASHINGTON. Reasons for Dismissal:** No Extraterritorial Application Here

*Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 976-77 (9th Cir. 2016) (observing that the Washington Consumer Protection Act does not apply extraterritorially where "neither party is a Washington resident and the acts giving rise to the claim occurred outside of Washington," especially where plaintiff does not "plausibly allege that [defendant's] activity harms the people of the state of Washington" (quotation omitted)).

**WISCONSIN. Reasons for Dismissal:** Inadequately pled

*Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp. 2d 659, 663 (W.D. Wis. 2009) (noting that, in order to show reliance as required by Wis. Stat. § 100.18, plaintiffs must show that "the representation . . . materially *induce[d] the plaintiff's decision to act*" and that "plaintiff would have acted in the absence of the representation." (quoting *Novell v. Migliaccio*, 749 N.W.2d 544, 554 (Wis. 2008) (emphasis and alterations in original)).

**WEST VIRGINIA. Reasons for Dismissal:** Pre-suit notice required; consumer nexus required

**Pre-Suit Notice:** W. Va. Code § 46A-6-106(c) ("[N]o action . . . may be brought pursuant to the provisions of this section until the person has informed the seller or lessor in writing and by certified mail, return receipt requested, of the alleged violation. . ..").

**Consumer Nexus:** *White v. Wyeth*, 705 S.E.2d 828, 836 (W.Va. 2010) (WVCPA is "intended 'to protect consumers . . . by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action."); W. Va. Code § 46A-6-102(2) (defining "consumer" as "a *natural person* to whom a sale or lease is made in a consumer transaction and a 'consumer transaction' means a sale or lease to a *natural person* or persons for a personal, family, household or agricultural purpose." (emphases added)).

**WYOMING. Reasons for Dismissal:** Pre-suit notice required; consumer nexus required

**Pre-Suit Notice:** Wyo. Stat. § 40-12-108(a) (allowing a private right of action under the Wyoming Consumer Protection Act for "an uncured unlawful deceptive trade practice"). Where a plaintiff has not alleged failure to cure, that plaintiff has "no valid cause of action for an uncured deceptive trade practice under the Act." *Broderick v. Dairyland Ins. Co*., 270 P.3d 684, 693 (Wyo. 2012); *see also id.* at 692 (practice uncured if in response to notice "either no offer to cure has been made within 15 days or there has been no cure within a reasonable amount of time after the acceptance of the offer.").

**Consumer Nexus:** Wyo. Stat. § 40-12-105(a) (defining an unlawful "deceptive trade practice" as one "in connection with a consumer transaction"); *id.* § 40-12-102(a)(ii) (defining "consumer transactions" as "the advertising, offering for sale, sale or distribution, of any merchandise to an individual for purposes that are primarily personal, family, or household.").