UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PLUMBERS' LOCAL UNION NO. 690 HEALTH PLAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APOTEX CORP., et al.<br><br>Defendants. | Civil Action No. 2:16-cv-00665-AB<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S OPPOSITION TO TEVA PHARMACEUTICAL INDUSTRIES LTD.'S MOTION TO DISMISS**

Plaintiff submits this Memorandum of Law in Opposition[1] to the Motion to Dismiss of Teva Pharmaceutical Industries Ltd. (Dkt. No. 211) (*"Teva"*)(the **"Motion"**).

I.   **BACKGROUND**

   A.   **Plaintiff's Amended Complaint Contains all the Requisite Jurisdictional Facts to Overcome Teva's Claims of a Lack of Personal Jurisdiction.**

When running a simple search on Google, an address for Teva Pharmaceutical Industries Ltd. appears in West Chester, Pennsylvania. *See* Google maps, indicating an address of 145 Brandywine Parkway, West Chester, PA 19380 for Teva Pharmaceutical Industries Ltd.,

---

[1] This Memorandum incorporates the Plaintiff's Omnibus Opposition to Individual Defendants' Motions to Dismiss ("Omnibus Opposition"), which sets forth all applicable legal standards to the defense arguments for dismissal based on a claimed lack of personal jurisdiction, as well as a summary of the Plaintiff's opposition thereto. This Brief is intended to apply such standard to the particular, individual arguments raised by Teva in its separate brief. Teva's argument that there is a lack of service of process is addressed separately in Plaintiff's Brief in Opposition to the Motions to Dismiss of Defendants Teva Pharmaceuticals Industries Ltd., Dr. Reddy's Laboratories Limited, Qualitest, Boca Pharmacal, Strativa Pharmaceuticals and Endo Pharmaceuticals, Inc. for Insufficient Service of Process at Dkt. No. 251.

1

attached hereto as Exhibit "A".  This location alone should moot any argument by Teva that this Court lacks personal jurisdiction. [2]  Further, on Teva's webpage, it lists 11 offices in the United States.  *See,* Teva, "A truly global operations network," attached hereto as Exhibit "B".

Teva accepted as true all of the factual allegations contained in the Amended Complaint ("AC").  *See* Dkt. No. 211-1 at 2, fn 2.  These allegations include the following about Teva:

1. They "engage in the business of manufacturing, distributing, pricing, marketing and selling prescription drugs purchased and/or reimbursed by Plaintiff [in Pennsylvania] and the Class."  AC ¶ 128.
2. Their generic drugs "were priced, marketed and sold in the unlawful manner alleged" in the complaint.  AC at ¶ 130.
3. They "transact[] business" in Pennsylvania, "are causing harm to Pennsylvania citizens by acts occurring outside the Commonwealth", and "have maintained the most minimum contact with this Commonwealth allowed under the United States Constitution." *Id.* at ¶ 153.
4. "Local 690 and members of the Class [] reside in Pennsylvania". *Id.* at ¶¶ 28, 453.
5. "In distributing, pricing, marketing and selling prescription drugs to beneficiaries of Local 690 and the Pennsylvania-based TPPs in the Class, as well as consumers not covered by such plans, and in engaging in the unlawful conduct more fully described herein, the [Teva] defendants are engaging in trade or commerce that directly or indirectly harmed consumers in Pennsylvania." *Id.* at ¶ 459.
6. The harm was caused "each time a medical provider charged a Pennsylvania patient at the inflated AWP value set by the [Teva] defendants for their drugs," and "each time a provider, PBM, or other intermediary benefitted from any spread between the actual wholesale cost of such drugs and the inflated AWP value set by the defendants for drugs sold in Pennsylvania". *Id.* at ¶ 461(c), (e).

Even if Teva had not accepted these factual averments as true for purposes of its Motion, under this Court's standard, the averments are nevertheless establish personal jurisdiction over Teva at this juncture because "a court must accept the plaintiff's allegations as true and construe all

---

[2] For jurisdictional purposes, the 40 State Attorneys General who have sued Heritage Pharmaceuticals, Inc. ("Heritage"), based in New Jersey, have stated that "[a] large number of generic drug manufacturers … are headquartered in close proximity to one another in New Jersey or eastern Pennsylvania, giving them easier and more frequent opportunities to meet and collude."  Mot. for Judicial Notice Ex. A, *Conn. v. Aurobindo Pharma USA, Inc.* at ¶ 54.

factual disputes in the plaintiff's favor." *Finn v. Great Plains Lending, LLC,* 2016 U.S. Dist. LEXIS 21558, 2016 WL 705242 (E.D. Pa. Feb. 23, 2016).

      **B.**    **The Teva Markets and Sells Generic Drugs In Pennsylvania to Plaintiff and the Class.**

The Amended Complaint alleges that Teva manufactures, distributes, prices, markets and sells pharmaceutical drugs under labeler codes 00093, 00172, 00332, 00480, 00555, 00575, 00703, 15894, 38245, 42185, 43806, 50732, 51285, 51846, 53183, 55953, 57844, 59310, 62528, 65473, and 68546, among others. AC ¶130. The complaint further alleges that "generic pharmaceutical drugs under such labeler codes were priced, marketed and sold in the unlawful manner alleged". AC ¶35. There are hundreds of drugs with such labeler codes. *See* Chart for Teva attached hereto as Exhibit "C".[3]

      **C.**    **Teva Competes with Pennsylvania-Based Defendants in the Marketing and Sales of Their Drugs.**

As set forth in Plaintiff's Omnibus Opposition, and in more detail in Plaintiff's Opposition to Defendants' Joint Motion to Dismiss, two of Defendant Heritage's [4] highest-

---

[3] In view of Teva's jurisdictional challenge, Plaintiff is compelled to proffer to the Court a more fulsome listing of the NDCs for the Teva drugs included under such labelers so the Court can gauge the sheer volume of product manufactured, distributed, marketed and sold in Pennsylvania by Teva. Because these drugs lists are drawn from a public database widely recognized as a reliable source of the drugs sold by drugs companies under their FDA-issued labeler codes, Plaintiff respectfully seeks to have this Court judicially notice Teva's drug list attached hereto. https://www.findacode.com/ndc/search.php. Should Teva object, Plaintiff requests jurisdictional discovery of these facts in support of its opposition.

[4] According to the OAG Complaint (which was filed two-days prior to this filing, Heritage was the "[t]he principal architect and ringleader of the conspiracies identified**"** in the OAG Complaint. "Through its senior-most executives and salespersons, Heritage organized and initiated a wide-ranging scheme which included numerous generic drug manufacturers, all of whom were knowing and willing participants. Collectively, Defendants were able to obtain a substantial windfall as a result of these illegal agreements." Mot for Judicial Notice Ex. A at ¶ 10. The windfall was the increased profits and the illegal agreements were those that the generic drug manufacturers of Glyburide and Doxycycline executed to artificially and fraudulently increase prices. Heritage is a named Defendant in the case at bar, however, Heritage did not seek dismissal under 12(b)(2).

3

ranking executives are being criminally prosecuted for artificially increasing generic drug prices—specifically, Glyburide and Doxycylene. *See* AC at ¶69. Also, Attorneys General from 40 States filed an Amended Complaint against Heritage and others setting forth facts of a widespread conspiracy. Mot. for Judicial Notice, Ex. A (*Conn.v. Aurobindo Pharma USA, Inc.*).

> **1. Heritage conspired with Teva and others in the unlawful marketing and sales of their drugs.**

Paragraphs 104 through 124 of the OAG Ccomplaint[5] deal specifically with Glyburide to exemplify the details of the pricing, bidding strategies and acquisitions of increased market share for Heritage and its competitors. As pled in the Complaint, Teva (a "competitor" of Heritage in the sale of Glyburide) was likely involved in this scheme and participated in meetings, conference calls, industry trade shows, emails, text messages, "Girls Nights Out" and "Women in Industry" meetings in Pennsylvania and New Jersey.

Mylan Pharmaceuticals, Inc. ("Mylan"), which resides in Pennsylvania, manufactures, markets, and sells Glyburide and Doxycyclene. Plaintiff alleges that Mylan is part of a larger conspiracy with the other generic manufactures to artificially inflate their generic drug prices.

> a. Heritage Conspired with Teva, Mylan, the Forest Defendants, the Watson Defendants, Apotex, Actavis Elizabeth, Actavis Kadian, Actavis Mid-Atlantic, Actavis Pharma, Actavis South Atlantic, Actavis Totowa, Dr. Reddy's Laboratories, Ltd., and Apotex Corp. and Others In the Unlawful Marketing and Sale of Generics Drugs.

Teva, in concert and collusion with Heritage, Mylan, the Forest Defendants, the Watson Defendants, Apotex, Actavis Elizabeth, Actavis Kadian, Actavis Pharma, Inc., Actavis Mid-Atlantic, Actavis South Atlantic, Actavis Totowa and Others sold overpriced generic drugs. As alleged in the Amended Complaint, Teva and those named herein intentionally, fraudulently and

---

[5] The OAG Complaint also names Teva and Mylan—both of whom are named several times as Defendants in Plaintiff's action here.

unlawfully, acting alone and in concert with each other, increased the price of their generic drugs.

### D. *Cariten Insurance Company, et. al. v. Astrazeneca AB, et. al.—The "Cariten Action"*

On June 11, 2014, numerous plaintiffs filed a civil action in the Philadelphia County Court of Common Pleas against, *inter alia*, Teva. Teva did not contest personal jurisdiction in Philadelphia county. Rather, using the same attorneys they employ in this case, Teva filed a Notice of Removal to this Court on July 8, 2014 (the **"Notice"**). *A copy of the Generics Defendants' Notice of Removal is attached as Exhibit "G" to Mot. for Judicial Notice*. The Notice explicitly confirms that Teva consented to the Notice and acknowledged this Court's personal jurisdiction over it. Teva then objected to the plaintiffs' motion to remand the case, invoking this Court's personal jurisdiction over it to seek relief. Personal jurisdiction is waived in this Court.

## II.   ARGUMENT

### A.   This Court has General Jurisdiction over Teva.

Teva had "continuous and systematic" contacts with Pennsylvania sufficient enough for this Court to exercise jurisdiction over them. These contacts were direct and substantial. Teva lists a Pennsylvania address. It sold generic drugs in Pennsylvania, likely through sales representatives and agents in Pennsylvania. These numerous sales alone, along with Teva's sales and marketing practices conducted in Pennsylvania in the ordinary course of Teva's business, establish that this Court has general jurisdiction over Teva. Teva has consented to this Court's jurisdiction via the *Cariten* Action.

### B.   This Court Has Specific Jurisdiction Over Teva.

### 1. Teva purposefully availed itself of the benefits and protections of Pennsylvania law when it marketed and sold generic drugs to Pennsylvania residents in the admittedly unlawful manner described in the Amended Complaint, which caused harm.

Despite their acceptance of the factual allegations in the Amended Complaint, the Teva Motion is based on the flawed premise that *"[t]he the alleged conduct at causing Plumbers' alleged harm or tortious injury is the setting and reporting of allegedly inflated AWPs*." (emphasis added). *See* Teva Mot. to Dismiss, Dkt. No. 211-1 at 8. To the contrary, the Amended Complaint alleges jurisdictional facts that go far beyond this general statement.

Further, Plaintiff's allegations are tested for their sufficiency, not their weight against the Jurisdictional Defendants' affidavits. *See Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1998)("we want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts"). It is unsurprising, then, that federal courts throughout the country find that foreign drug companies have sufficient contacts with the forum state for the courts to exercise jurisdiction over them.

Despite Teva's protestations, courts routinely find that foreign drug companies have sufficient minimum contact with forum states so that jurisdiction is reasonable. *See, e.g. In re Polyester Staple Antitrust Litig.*, 2008 U.S. Dist. LEXIS 43865, at *52-65 (W.D.N.C. Apr. 1, 2008)(finding general and specific jurisdiction over foreign drug company). For instance, in the *In re Cardizem CD Antitrust Litigation*, a defendant drug company located abroad but operating in the United States through a subsidiary, was deemed to have sufficient minimum contacts with the forum through the following syllogism:

> Plaintiffs allege . . . that [defendant] controls the board of directors and business operations of [its subsidiary], including its pharmaceutical business in the United States; that part of that pharmaceutical business in the United States includes the sale and distribution of [the drug at issue] to consumers in [the fora]; that

6

> Plaintiffs in [the fora] were consumers of [the drug at issue]; that these . . . Plaintiffs suffered . . . overcharges paid for [the drug at issue] as a result of Defendant['s] conspiracy . . . to restrain trade, reduce competition and to fix prices; and that Defendant [] profited from overcharges paid by the . . . Plaintiffs.

105 F. Supp. 2d 618, 675 (E.D. Mich. 2000). When the court construed these allegations favorably to the plaintiffs, it deemed them sufficient. Specifically, it found that these allegations demonstrated:

> [Defendant] has purposefully availed itself of the privilege of conducting business in all states, including [the fora]; that [defendant drug company] authorized distribution of [the drug at issue] in [the fora]; that it caused injury in those states; that it shared in profits generated by sales of [the drug at issue] in those states; that the cause of action arises from [defendant'] contacts with these states because they are related to the operative facts of the controversy; and the consequences caused by [defendant's] contacts have a substantial enough connection with these states to make the exercise of jurisdiction over [defendant] reasonable.

*Id*. Significantly, the court followed the reasoning of the Sixth Circuit and concluded that by obtaining FDA approval and deliberately marketing the drug at issue in the forum, that the foreign drug company had purposely availed itself of the jurisdiction. *Id*. at 675-76 (citing *Tobin v. Astra Prod. Inc.*, 993 F.2d 528, 543-44 (6th Cir. 1993)). Further, contrary to Defendants' assertions that the locus of price-fixing is at the nerve center of these drug companies, the court recognized that "the place of injury from [] price-fixing [] is the place of sale because the consumer is injured at the time he [or she] pays the inflated price." *Id*. at 675 n. 29 (quoting *In re Mid-Atlantic Toyota Antitrust Litig*, 525 F. Supp. 1265, 1274 (D. Md. 1981)). Time and again, courts have confirmed that when a company directs its products towards a forum and residents of that forum purchase its products, jurisdiction lies for the associated injury. *See, e.g. Law Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp. 2d 714, 720-21 (E.D. Pa. 2015)(finding 250 purchases of product by nonparties to be sufficient minimum contacts).

7

Here, Plaintiff has alleged that Teva directed its products to Pennsylvania where they were purchased and used by residents of Pennsylvania who are members of the Class. *See* A.C. at ¶¶ 459-62, 592-99, 601-08. For this reason, this Court should find that Teva has sufficient minimum contacts to establish specific jurisdiction.

### 2. Because Teva made a conscious choice to conduct business with the residents of Pennsylvania, it is subject to suit here.

Teva made a conscious choice to inflate drug prices and so it could profit off of those sales to residents of Pennsylvania. It did not have to do so, and therefore it purposefully availed itself of doing business in Pennsylvania. "When a defendant makes a conscious choice to conduct business with the residents of a forum state, it has clear notice that it is subject to suit there." *Willyoung v. Colo. Custom Hardware, Inc.*, 2009 U.S. Dist. LEXIS 91557 * 29 (W.D. Pa. Sept. 30, 2009)(quotation omitted). In *Willyoung,* the Court found that it acquired personal jurisdiction over the defendant. *See generally, id.* Like Teva here, the defendant in *Willyoung* "was under no obligation to sell its services to Pennsylvania residents" but "freely chose to do so" for a profit. *Id.* Teva must have anticipated that they will be subject to a suit in Pennsylvania when it began to sell its generic drugs here—if it did not, it simply could have chosen not to sell generics to Plaintiff and other Pennsylvania residents. *Id.*

### 3. The in-state injuries arise from the purchase of different types of generic drugs that Teva placed into the "Stream of Commerce".

This Court acquired specific personal jurisdiction over Teva when Teva placed the drugs listed in Exhibit "C" into the "stream of commerce." The "stream of commerce" theory of jurisdiction, adopted by the Third Circuit and the Supreme Court, allows a court to exercise personal jurisdiction over a defendant that directs its products into a forum. *See In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 562 (M.D. Pa. 2009)

### 4. Teva's conduct, even outside of this forum, produced harmful effects to Plaintiff and the Class in Pennsylvania under the "Calder Effects" test.

Assuming *arguendo* that Plaintiff's only charge against Teva is that Teva conspired with others to inflate generic drug prices outside this Commonwealth (which it is not), Plaintiff and the Class suffered the harmful financial "effects" of Teva's conduct here in Pennsylvania. A plaintiff may predicate specific jurisdiction upon a defendant's activities outside of the relevant forum if the plaintiff suffered the effects of the conduct within the forum. *Calder*, 465 U.S. at 789-90; *Imo Indus. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).

Under the *Calder* "Effects" test, this Court has specific jurisdiction because: (1) the Amended Complaint states that Teva committed intentional torts; (2) Plaintiff and the Class felt the brunt of the economic harm in Pennsylvania, and Pennsylvania is the focal point of the harm suffered by Plaintiff and the Class as a result of the tort, and (3) Teva, through its sales and marketing, expressly aimed its tortious conduct at Pennsylvania.

To satisfy the final element of the test, plaintiff must (a) demonstrate that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum" and (b) "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Imo Indus.*, 155 F.3d at 265. A plaintiff may rely upon the *Calder* effects test to acquire jurisdiction over a defendant in cases involving business torts, including price fixing. *In re Bulk [Extruded] Graphite Prods.*, 2007 WL 2212713, at *6 (D.N.J. July 30, 2007); *see also Imo Indus.*, 155 F.3d at 265-66 (establishing the framework for application of the *Calder* test to business torts).

### 5. Teva is alleged to have conspired with its various subsidiaries, and the other Pennsylvania resident Defendant corporations, to commit the acts which caused harm in Pennsylvania to Plaintiff and the Class.

9

Courts within this Circuit have shown a willingness to exercise jurisdiction over non-resident defendants based on the "conspiracy theory" of jurisdiction when the facts of the case warrant its application. *Sugartown Worldwide LLC v. Shanks*, 2015 U.S. Dist. LEXIS 36495 (E.D. Pa. Mar. 24, 2015) *(citing Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 846 F. Supp. 374, 379 (E.D. Pa. 1994; *Santana Prods., Inc. v. Bobrick Washroom Equip.*, 14 F. Supp. 2d 710, 718-21 (M.D. Pa. 1998)). The Amended Complaint outlines Teva's conspiratorial conduct in pages 115 through 118.

Since the Plaintiff's Amended Complaint was filed in this action, the OAG Complaint was filed and 40 Attorneys General already confirmed that generic drug manufacturers engaged in "conspiratorial meetings" like the ones alleged in the Amended Complaint. The Amended Complaint parallels the OAG Complaint:

> "[Defendants] held conspiratorial meetings, conferences, telephone and other communications, and with their trade association, for the purpose of discussing the improper sales and marketing practices set forth herein, and the concealment of the truth alleged in the Amended Complaint."

Am. Complt. at ¶ 613. These allegations are sufficient at this juncture.

### C. In the alternative, Plaintiff should be permitted to obtain jurisdictional discovery.

Plaintiff served Teva with jurisdictional discovery prior to filing this Memorandum. In the event that this Court determines that it does not have personal jurisdiction over Teva (based on the allegations of the Amended Complaint and the attachments to this Memorandum), Plaintiff should be permitted to obtain jurisdictional discovery from Teva.

### CONCLUSION

For these reasons, the Teva's Motion to Dismiss should be denied.

Date:   March 3, 2017                                     Respectfully submitted,

*/s/ Donald E. Haviland, Jr.*
Donald E. Haviland, Jr.
PA Attorney I.D. #66615
Christina M. Philipp
PA Attorney I.D. #92804
**Haviland Hughes**
201 South Maple Way, Suite 110
Ambler, PA  19002
Telephone:  (215) 609-4661

Dion G. Rassias, Esquire
PA Attorney I.D. #49724
Jillian E. Johnston, Esquire
PA Attorney I.D. #208610
**The Beasley Firm, LLC**
1125 Walnut Street
Philadelphia, PA 19107
Telephone:  (215) 592-1000

## **CERTIFICATE OF SERVICE**

I, Donald E. Haviland, Jr., counsel for Plaintiff, Plumbers Local Union No. 690 Health Plan hereby certify that I have this \_\_\_\_\_ day of March, 2017 filed the forgoing Opposition to Individual Defendants' Motions to Dismiss with the Clerk of the Court using the ECF system which sent notification of such filing to all parties of record in this case.

Dated: March _____, 2017                                                                 *s/ Donald E. Haviland, Jr.*