**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PLUMBERS' LOCAL UNION NO. | : | |
| 690 HEALTH PLAN, | | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 16-665 |
| v. | : | |
| | : | |
| APOTEX CORP., et al., | : | |
| Defendants. | : | |

**September  25, 2017**                                                    **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

## I. INTRODUCTION

Plaintiff Plumbers Local Union No. 690 Health Plan ("Plumbers") is a health insurance

plan that provides prescription drug coverage to members of Plumbers Local Union No. 690.

Defendants ("Generic Drug Manufacturers") are pharmaceutical companies who distribute,

market and sell generic prescription pharmaceutical drugs.  Plumbers brings this putative class

action against a multitude of Generic Drug Manufacturers alleging claims under Pennsylvania

state law for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection

Law, negligent misrepresentation, unjust enrichment, civil conspiracy, and aiding and abetting

("Pennsylvania Claims").  Plumbers also brings claims against Generic Drug Manufacturers for

violations of the consumer protection laws of forty-eight additional states and two territories

("Non-Pennsylvania Claims").[1]  Generic Drug Manufacturers move to dismiss the Amended

---

[1] I exercise subject matter jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act ("CAFA").  CAFA grants the Court original jurisdiction over this putative class action because (1) it involves a proposed plaintiff class of 100 or more members; (2) the amount in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs; and (3) the parties are minimally diverse—any member of the proposed class is a citizen of a State different from any defendant.  28 U.S.C. §§ 1332(d)(2), (5)(B).

Complaint.  For the reasons set forth below, I will grant Generic Drug Manufacturers' motions to dismiss.

## II. BACKGROUND

### A. Current Litigation[2]

#### 1. The Parties

Generic Drug Manufacturers are pharmaceutical companies who distribute, market and sell generic prescription pharmaceutical drugs.  Am. Compl. ¶ 1.  Plumbers is a health insurance plan that provides health coverage, including prescription drug coverage to members of the plan ("Plan Members").[3]  *See, e.g.*, Am. Compl. ¶ 157.

#### 2. Reimbursements for Prescription Drugs and Average Wholesale Prices

Medical professionals prescribe drugs to Plan Members.  Plan Members acquire these drugs either at pharmacies authorized by medical professionals to dispense these drugs or medical professionals administer these drugs directly to Plan Members.  Am. Compl. ¶ 163.  After a pharmacist or medical professional ("Provider") supplies a drug to a Plan Member, the Provider then seeks reimbursement from Plumbers.  The Provider typically bills Plumbers for each prescription drug based on the Average Wholesale Price ("AWP") for the drug, Am. Compl. ¶¶ 165, 169, and Plumbers pays the provider for the prescription drug "using a formula which includes AWP as a key component of the amount of reimbursement,"[4] Am. Compl. ¶ 157.

Plumbers obtained the AWP for each prescription drug from pricing compendia,

---

[2] All facts in this section are taken from the Amended Complaint.

[3] Plumbers resides in Pennsylvania and it has Plan Members who reside in Pennsylvania.  Am. Compl. ¶ 154.

[4] While is unclear from the Amended Complaint exactly who determines the amount for reimbursement and exactly how the AWP figures into the reimbursement formula, this lack of clarity does not impact the analysis.

including First Databank's Blue Book, Medical Economics' Red Book, and Medispan.  Am. Compl. ¶¶ 158, 180.  Generic Drug Manufacturers provided the AWP value for each of their drugs to the pricing compendia.  Am. Compl. ¶¶ 158, 182.  The AWPs that appeared in the pricing compendia were solely based on the information Generic Drug Manufacturers reported to the compendia.  Am. Compl. ¶ 158, 182.  The "actual transactional price data—the amounts charged to the medical providers and others for their drugs—was not publically available."  Am. Compl. ¶ 183.

### 3. Average Wholesale Price Inflation

Since at least 1991 to the present, the AWPs relied on by Plumbers failed to reflect the actual average wholesale prices that Providers paid for the prescription drugs.  Am. Compl. ¶ 171.  Generic Drug Manufacturers have intentionally inflated their reported AWPs, and the Providers have billed Plumbers at these inflated AWPs for the generic drugs. Am. Compl. ¶¶ 163, 200.  Consequently, Plumbers has reimbursed the Providers for Plan Members' purchases of the generic drugs based upon inflated AWPs.  Am. Compl. ¶ 29.

"Throughout the relevant time period, [Generic Drug Manufacturers] were aware that a figure called the AWP was the embedded standard used by virtually all payors for drug products . . . to determine how much to reimburse and pay for a given drug."  Am. Compl. ¶ 173.  Generic Drug Manufacturers "deliberately and intentionally" inflated their AWPs "so that the [] [P]roviders who purchased and dispensed these drugs at a low cost would bill patients and their insurers at the inflated AWPs, and thereby earn a substantial profit from the 'spread' between the real cost and the various AWP-related reimbursement rates."  Am. Compl. ¶¶ 208- 09.  Generic Drug Manufacturers intentionally inflated their AWPs to provide higher financial remuneration to the Providers.  They did so to encourage the Providers to purchase more of their generic drugs

thereby increasing Generic Drug Manufacturers' market share for their prescription drugs.  Am. Compl. ¶¶ 176, 188.  Accordingly, Generic Drug Manufacturers "knew or should have known that when they did not report actual average wholesale prices to the compendia, those inflated AWPs would increase and distort reimbursement levels."  Am. Compl. ¶ 184.  This, of course, would harm third-party payors, like Plumbers, who reimburse the cost of prescription drugs for Plan Members.  Am. Compl. ¶ 185.  To perpetuate their "unfair and deceptive marketing and sales scheme," Am. Compl. ¶ 611, Generic Drug Manufacturers "engaged in a continuing conspiracy to deceive Plaintiff and the Class by causing them to pay more for [] drugs than they otherwise would have," Am. Compl. ¶ 610.

### B. Prior Litigation

Prior to the current litigation, Plumbers had already participated in two other actions: *International Union of Operating Engineers, Local No. 68 Welfare Fund v. Astrazeneca PLC, et al.*, No. MON-L-3136-06 (N.J. Super. Ct. Eq. Div. filed June 30, 2003), a New Jersey state court class action (the "New Jersey AWP Class Action") and *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257 (D. Mass. filed Dec. 19, 2001), a multidistrict litigation class action in the United States District Court District of Massachusetts (the "MDL AWP Class Action") (collectively, the "AWP Class Actions").  The allegations in the current litigation and in the AWP Class Actions closely resemble each other. All three actions were brought against drug manufacturers who allegedly engaged in the following unlawful scheme:

   a.  The artificial inflation of the AWPs for their drugs;

   b.  The creation of spreads between the set AWPs and the actual price paid by medical providers;

c. The provision of free goods to medical providers, which were not accounted for in the reported AWPs;

d. The provision of other financial inducements to medical providers that were not accounted for in the reported AWPs; and

e. The concealment of the inflation of the AWPs.

Am. Compl. ¶ 196; Revised Fifth Amended Master Consolidated Class Action Complaint ¶¶ 174, 177, 180, 204, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257 (D. Mass. Apr. 26, 2007), ECF No. 4106 [hereinafter MDL AWP Compl.];[5] Complaint ¶¶ 15, 138, *Int'l Union of Operating Eng'rs, Local No. 68 Welfare Fund v. Astrazeneca PLC, et al.*, No. MON-L-3136-06 (N.J. Super. Ct. Eq. Div. June 30, 2003), ECF No. 241-5 [hereinafter N.J. AWP Compl.].[6]

**1. The New Jersey AWP Class Action**

In 2003, the International Union of Operating Engineers, Local No. 68 Welfare Fund ("IUOE") filed a state-law class action complaint in the Superior Court of New Jersey on behalf of a putative class of private consumers and third-party payors who had paid for drugs manufactured, marketed, distributed and sold by the defendants. N.J. AWP Compl. ¶¶ 24, 99. The complaint alleged that, since at least 1991, the defendants deliberately inflated the AWPs for their prescription drugs when they reported them to publications like the Red Book with full knowledge that the putative class members relied on these AWPs to determine the amount of reimbursement for each drug. N.J. AWP Compl. ¶¶ 99, 108, 109.

---

[5] The electronic court filing numbers listed after each MDL AWP Class Action filing refer to documents available on the docket for Civil Action No. 01-12557 in the United States District Court District of Massachusetts.

[6] The electronic court filing numbers listed after each New Jersey AWP Class Action filing refer to documents available on the docket for this action.

On July 7, 2008, Plumbers "agreed to act as a representative of the Class," and "to keep reasonably informed of th[e] action, to participate wherever possible, including discovery, to provide [] input and direction . . . , and to make sure that important decisions made in the case by Class Counsel [we]re done with [Plumbers'] input."  July 7, 2008 Certification of Thomas J. McNulty[7] ¶ 2, ECF No. 241-8 [hereinafter 2008 McNulty Certification]; Per Curiam Decision at 10, *Int'l Union of Operating Eng'rs, Local No. 68 Welfare Fund v. Astrazeneca PLC, et al.*, No. A-0605-08T2, slip op. at 10 (N.J. Super. Ct. App. Div. May 1, 2009), ECF No. 241-7 (stating that Plumbers had "agreed to act as a class representative and to fully participate in all aspects of litigation, including discovery" (citation omitted)).  Plumbers represented that it had reimbursed for the defendants' drugs listed in the complaint based on their AWPs, and "that over the same period alleged in the Complaint, [Plumbers] had reimbursed for numerous additional drugs, which [were] believe[d] to have also been based on those drugs' published AWPs, including both generic and brand name drugs . . . many of which were manufactured and sold by one or more Defendants."  May 5, 2009 Certification of Thomas J. McNulty ¶ 3, ECF No. 241-9 [hereinafter 2009 McNulty Certification].

In moving to add Plumbers as a class representative, IUOE affirmed that Plumbers was "making the same claims, about the same conduct, covering the same time period, about the same types of drugs, based upon the same New Jersey law, against the same defendants, as [IUOE]."  Pl.'s Reply in Support Mot. to Add Class Representatives at 6, *Int'l Union of Operating Eng'rs, Local No. 68 Welfare Fund v. Astrazeneca PLC, et al.*, No. MON-L-3136-06 (N.J. Super. Ct. Law. Div. Oct. 5, 2009), ECF No. 241-11 [hereinafter N.J. AWP Reply]. Although some examples of drugs purchased by Plumbers differed from those purchased by IUOE, the lack of complete overlap was insignificant because "[i]t [wa]s the conduct of

---

[7] Thomas J. McNulty was the Fund Administrator for Plumbers.

Defendants in implementing a scheme to inflate AWPs for their drugs that typifie[d] th[e] case, not the specific drugs within that scheme." N.J. AWP Reply 8. On Aug 16, 2010, the court granted the motion to add Plumbers as a class representative. Order, *Int'l Union of Operating Eng'rs, Local No. 68 Welfare Fund v. Astrazeneca PLC, et al.*, No. MON-L 3136-06 (N.J. Super. Ct. Law Div. Aug. 16, 2010), ECF No. 241-10 [hereinafter N.J. AWP Order].

Accordingly, as class representative, Plumbers alleged that "[t]he AWPs for these drugs is set by the defendants pursuant to a *standard industry formula* that causes the AWPS to be substantially higher than the actual cost for these drugs to medical providers and other suppliers." N.J. AWP Compl. ¶ 111 (emphasis added). "By deliberately inflating the AWP above the actual acquisition cost to the medical provider or other seller, the prescription drug manufacturer defendants created a 'spread' between what they set as the AWP and the actual price paid by medical providers and other suppliers for their drugs." N.J. AWP Compl. ¶ 112. The defendants created "such spreads . . . as a profit to medical providers and other suppliers and were used to incentivize medical providers and other suppliers to prescribe and sell" the defendants' drugs. N.J. AWP Compl. ¶ 112. Thus, the "[d]efendants conspired and agreed to accomplish this fraudulent marketing and sales scheme . . . in order to increase the sales of their drugs, profits, and market shares . . . ." N.J. AWP Compl. ¶ 136. As a result of the defendants' scheme, the plaintiff and putative class members suffered harm when they paid inflated prices for the defendants' drugs that were based in whole or in part on inflated AWPs. N.J. AWP Compl. ¶ 113.

### 2. The MDL AWP Class Action

In 2002, the Judicial Panel on Multidistrict Litigation approved of the consolidation of cases for pretrial proceedings into the MDL AWP Class Action before Judge Patti B. Saris in the

District of Massachusetts.  *See* Notice of Copy of MDL 1456 Conditional Transfer Order, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257 (D. Mass. May 31, 2002), ECF No. 97.  In the MDL AWP Class Action, private third-party payors and consumers brought a class action against brand and generic pharmaceutical drug manufacturers, alleging that the defendants intentionally inflated their AWPs that they reported to pricing compendia like the Red Book, with full knowledge that the putative class members relied on these AWPs to determine the amount of reimbursement for each drug.   MDL AWP Compl. ¶¶ 173-75.  The plaintiffs alleged that "the AWPs for the drugs at issue here bore little relationship to the drug's pricing in the marketplace.  They were simply fabricated and overstated in furtherance of Defendants' scheme to generate the profit spread to providers . . . and to increase Defendants' profits at the expense of Plaintiffs and the Class members."  MDL AWP Compl. ¶ 151.  Furthermore, they alleged that the "Defendant generic manufacturers . . . manipulate[d] their own AWPs in order to gain or maintain a competitive advantage in the market for their generic products."  MDL AWP Compl. ¶ 200.

On July 2, 2008, the district court preliminarily approved a settlement of the MDL AWP Class Action.  Order Granting Preliminary Approval, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257, (D. Mass. July 2, 2008), ECF No. 5426.  Insurers, like Plumbers, were given until March 16, 2009 to opt out of the settlement or file a settlement claim.  Order Revising Certain Dates, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257, (D. Mass. Jan. 7, 2009), ECF No. 5828.  In 2009, Plumbers submitted a timely claim and received an allocation of the settlement fund.  Decl. of Daniel Coggeshall at 123, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, Civil Action No. 01-12257, (D.

Mass. July 3, 2012), ECF No. 8167-1.

## III. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must engage in the following analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013), *as amended* (May 10, 2013) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted) (quoting *Shaw v. Digital Equip Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Thus, a court may

9

consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

"To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). "Under Federal Rule of Evidence 201, [a court] may take judicial notice at any stage of the proceeding of a fact not subject to reasonable dispute that is capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned." *Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000). Accordingly, a district may take judicial notice at the motion to dismiss stage. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (stating that "sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss," include "matters of a which a court may take judicial notice").

At the motion to dismiss stage, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)); *see also Benak ex rel. All. Premier Growth Fund v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (concluding that the district court did not abuse its discretion when it took judicial notice of newspaper articles to grant a motion to dismiss on statute of limitations grounds because the articles "serve[d] only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."); *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004), ("[A] prior judicial

10

opinion constitutes a public record of which a court may take judicial notice, [but] it may do so

on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts

asserted in the opinion."), *abrogated in part on other grounds by Twombly v. Bell Atl. Corp.,* 550

U.S. 544 (2007).  "Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant

raises ... [a statutory bar] as an affirmative defense and it is clear from the face of the complaint,

*and matters of which the court may take judicial notice*, that the plaintiff's claims are barred as a

matter of law."  *Staehr v. Hartford Fin. Servs. Grp., Inc*., 547 F.3d 406, 425 (2d Cir. 2008)

(quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)); *see also O'Boyle v.

Braverman*, 337 F. App'x 162, 164 (3d Cir. 2009) (same); *Benak*, 435 F.3d at 401-03

(dismissing suit on statute of limitations grounds after taking judicial notice of newspaper

articles that contributed to the court's determination that the plaintiffs were on inquiry notice of

their claims more than one year prior to filing suit).

## IV. DISCUSSION

Generic Drug Manufacturers move to dismiss all of Plumbers' Pennsylvania Claims on

the basis that Plumbers fails to adequately and plausibly plead these claims.  Additionally,

Generic Drug Manufacturers move to dismiss Plumbers' Non-Pennsylvania Claims on the basis

that Plumbers lacks standing to assert these claims.

### A. Pennsylvania Claims

#### 1. Negligent Misrepresentation Claims and Unfair Trade Practices and Consumer Protection Law Claims

Plumbers brings claims against Generic Drug Manufacturers for negligent

misrepresentation.[8]  Additionally, Plumbers brings claims against Generic Drug Manufacturers

---

[8] Although Plumbers brings claims for negligent misrepresentation and fraud in Count IV of the Amended Complaint, it has now voluntarily withdrawn its fraud claim.  Pl.'s Opp'n 39.

for deceptive conduct under the catch-all provision of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL'), 73 Pa. Stat. Ann. § 201-2(4)(xxi).[9] Generic Drug Manufacturers move to dismiss these claims on the basis that Plumbers fails to adequately and plausibly plead that it justifiably relied on Generic Drug Manufacturers' inflated AWPs and that this reliance caused it actual harm. Plumbers concedes that reliance is required to establish a claim for negligent misrepresentation, but contends that it remains an open question as to whether reliance is a required element for deceptive conduct under the catch-all provision of the UTPCPL. Additionally, Plumbers asserts that it adequately and plausibly pleads justifiable reliance.

In order to establish a claim for negligent misrepresentation, a plaintiff must present proof of: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999). Thus, a successful claim for negligent misrepresentation requires proof of justifiable reliance.

The UTPCPL is Pennsylvania's consumer protection law that prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Stat. Ann. § 201-3. "The statute creates a private right of action in persons upon whom unfair methods of competition and unfair or deceptive acts or practices are employed and who as a result, sustain an ascertainable loss." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 190 n.4 (Pa. 2007) (citing 73 Pa. Stat. Ann. § 201-9.2). "The Supreme Court of Pennsylvania has consistently interpreted the Consumer Protection Law's private-plaintiff standing provision's causation requirement to demand a showing of justifiable reliance, not simply a causal

---

[9] Although Plumbers alleges several types of violations of the UTPCPL in Count I of the Amended Complaint, it has now voluntarily withdrawn all UTPCPL claims other than its deceptive conduct claim under the catch-all provision. Pl.'s Opp'n 39 n.19.

connection between the misrepresentation and the harm."[10]  *Hunt v. U.S. Tobacco Co*., 538 F.3d 217, 222 (3d Cir. 2008), *as amended* (Nov. 6, 2008).   Given the Pennsylvania courts' repeated holdings that a plaintiff seeking to bring a private cause of action under the UTPCPL must show justifiable reliance and harm suffered as a result, the Third Circuit has explicitly held "that private plaintiffs alleging deceptive conduct under the statute's post–1996 catchall provision must allege justifiable reliance."  *Hunt*, 538 F.3d at 224; *see also Kirwin v. Sussman Auto*., 149 A.3d 333, 336-37 (Pa. Super. 2016) (holding that the post-1996 catch-all provision of the UTPCPL requires a showing of justifiable reliance); *Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1287 (Pa. Super. 2015) ("[J]ustifiable reliance is an element of all private claims under the UTPCPL.").  Thus, in order to establish a claim for deceptive conduct under the catchall provision of the UTPCPL, a plaintiff must prove: (1) "a deceptive act, that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances"; (2) "justifiable reliance, in other words that [the plaintiff] justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the [defendant's] misrepresentation or deceptive conduct"; and (3) "that this justifiable reliance caused ascertainable loss."  *Seldon v. Home Loan Servs., Inc*., 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009) (internal quotation marks omitted); *see Hunt*, 538 F.3d at 221-27.

---

[10] The private-plaintiff standing provision provides:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby *suffers any ascertainable loss* of money or property, real or personal, *as a result of the use or employment by any person of a method, act or practice declared unlawful* by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 Pa. Stat. Ann. § 201-9.2(a) (emphasis added).

Accordingly, in order to succeed on either a negligent misrepresentation claim or a claim for deceptive conduct under the catch-all provision of the UTPCPL, Plumbers must establish that it justifiably relied on Generic Drug Manufacturers' inflated AWPs and that this reliance caused its harm.  *See Hunt*, 538 F.3d at 224.  Justifiable reliance is typically a question of fact.  *Toy*, 928 A.2d at 208.  However, a court may determine, even at the motion to dismiss stage, that a plaintiff's allegations of justifiable reliance fail as a matter of law. *Hunt*, 538 F.3d at 227 (determining at the motion to dismiss stage that the plaintiff's claim for deceptive conduct under the catch-all provision of the UTPCPL was inadequate because the plaintiff failed to plausibly plead justifiable reliance).

"To be justifiable, reliance upon the representation of another must be reasonable." *Porreco v. Porreco*, 811 A.2d 566, 571 (Pa. 2002).  "Whether reliance on an alleged misrepresentation is justified depends on whether the recipient knew or should have known that the information supplied was false." *Id.* (quoting *Fort Washington Res., Inc. v. Tannen*, 858 F. Supp. 455, 460 (E.D. Pa. 1994)).  "[T]he recipient of an allegedly fraudulent misrepresentation is under no duty to investigate its falsity in order to justifiably rely, but . . . he is not justified in relying upon the truth of an allegedly fraudulent misrepresentation if he knows it to be false or if its falsity is obvious." *Toy*, 928 A.2d at 207; *see also Emery v. Third Nat. Bank of Pittsburgh*, 162 A. 281, 284 (Pa. 1932) ("If a man knows the truth about a representation, he is neither deceived nor defrauded, and any loss he may sustain is in effect self-inflicted."). This is because "knowledge negates the *affirmative element of reliance.*" *City of Philadelphia v. Lead Indus. Ass'n,* No. 90-7064, 1992 WL 98482, at *3 n.4 (E.D. Pa. Apr. 23, 1992).  In addition to believing a misrepresentation, a plaintiff must show that his reliance on the misrepresentation caused the harm—a requirement more stringent than simply a causal connection between the reliance and

the misrepresentation:

> A mere causal connection can be established by, for instance, proof that a misrepresentation inflated a product's price, thereby injuring every purchaser because he paid more than he would have paid in the absence of the misrepresentation. A justifiable-reliance requirement, by contrast, requires the plaintiff to go further—he must show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation.

*Hunt*, 538 F.3d at 222 n.4 (citing *Weinberg v. Sun Co.*, 777 A.2d 442, 445-46 (Pa. 2001)).

As set forth in the Amended Complaint, Plumbers' theory of the case is that Generic Drug Manufacturers misrepresented that the AWPs for their drugs were the actual average wholesale prices, knowing that Plumbers, and other third-party payors, used the AWPs as a key component in their formula for determining the amount to pay Providers.  Thus, Plumbers claims are predicated on the contention that it relied on Generic Drug Manufacturer's misrepresentation that the AWPs were the actual average wholesale prices that Providers paid for the drugs, and suffered harm as a result because it overpaid Providers using a reimbursement formula crucially based on the inflated AWPs.  Plumbers argues that it adequately pleads both negligent misrepresentation and deceptive conduct under the catch-all provision of the UTPCPL.

Despite Plumbers contention, however, Plumbers never alleges in its Amended Complaint that it ever believed that Generic Drug Manufacturers' AWPs were the actual average wholesale prices of their drugs.  This is not surprising.  Given Plumbers participation in the prior AWP Class Actions, Plumbers could not credibly make such an allegation.  Put plainly, this is because Plumbers already knew, when it agreed in 2008 to act as a class representative in the New Jersey AWP Class Action, that the AWPs reported by drug manufacturers were not the actual average wholesale prices of the drugs.  As Plumbers accurately alleged in the Complaint for the New Jersey AWP Class Action, "[t]he AWPs for these drugs is set by the defendant[]

[drug manufacturers] pursuant to a *standard industry formula* that causes the AWPS to be substantially higher than the actual cost for these drugs to medical providers and other suppliers." N.J. AWP Compl. ¶ 111 (emphasis). Although Plumbers never alleges that it believed the AWPs were the actual average wholesale price of the drugs, it does allege that it was "unaware of the artificial inflation of the AWP." Am. Compl. ¶ 599. This allegation, however, directly conflicts with Plumbers understanding of AWPs as early as 2008—that it was standard industry practice to inflate them above their actual average wholesale prices.

Plumbers overall participation in the prior AWP Class Actions clearly demonstrates that Plumbers knew the AWPs were not the actual average wholesale prices of the drugs. All three actions were brought against defendant drug manufacturers who allegedly engaged in the following unlawful scheme:

a.   The artificial inflation of the AWPs for their drugs;

b.   The creation of spreads between the set AWPs and the actual price paid by medical providers;

c.   The provision of free goods to medical providers, which were not accounted for in the reported AWPs;

d.   The provision of other financial inducements to medical providers that were not accounted for in the reported AWPs; and

e.   The concealment of the inflation of the AWPs.

Am. Compl. ¶ 196; N.J. AWP Compl. ¶¶ 15, 38; MDL AWP Compl. ¶¶ 174, 177, 180, 204. In the AWP Class Actions, the plaintiffs recognized that the AWPs were not the actual average wholesale prices of any drugs. Moreover, in the New Jersey AWP Class Action, Plumbers represented to the court "that over the same period alleged in the Complaint, [Plumbers] had

reimbursed for numerous additional drugs, which [were] believe[d] to have also been based on those drugs' published AWPs, including both generic and brand name drugs . . . many of which were manufactured and sold by one or more Defendants."  2009 McNulty Certification ¶ 3. Thus, Plumbers explicitly acknowledged that it believed that the published AWPs for both generic and brand name drugs were inaccurate, and the scheme to inflate the AWPs was more widespread than the drugs involved in the case.  See N.J. AWP Reply 8 (asserting that"[i]t [wa]s the conduct of Defendants in implementing a scheme to inflate AWPs for their drugs that typifie[d] th[e] case, not the specific drugs within that scheme").

Given the striking similarities between Plumbers' Amended Complaint in this action and the complaints and representations made in the AWP Class Actions, Plumbers cannot credibly argue that it believed that Generic Drug Manufacturers' AWPs were the actual average wholesale prices of their drugs at the time it filed this action.  Because Plumbers knew that the AWPs were not the actual average wholesale prices of Generic Drug Manufacturers' drugs, Plumbers cannot plausibly claim to have justifiably relied on the misrepresentation that they were the actual average wholesale prices because "knowledge negates the affirmative element of reliance*." Lead Indus.*, 1992 WL 98482 at *3 n.4 (emphasis omitted).  Put another way, "the recipient of an allegedly fraudulent misrepresentation . . . is not justified in relying upon the truth of an allegedly fraudulent misrepresentation if he knows it to be false or if its falsity is obvious." *Toy*, 928 A.2d at 207.  Plumbers both knew that the AWPs were not the actual average wholesale prices for Generic Manufacturers' drugs and the falsity was obvious.[11]  The absence of a single

---

[11] In addition to the prior AWP Class Actions, the public record in Pennsylvania supports that Plumbers knew that the AWPs of Generic Drug Manufacturers' drugs were not based on the actual average wholesale prices that Providers paid for these drugs.  In 2005, the Pennsylvania Department of Public Welfare changed the way the AWP was used to reimburse generic drugs in recognition of the fact, as noted by the Congressional Budget office in its December 2004 report on Medicaid FFS, that "the

pleading in Plumbers' Amended Complaint that it believed that the AWPs of the drugs were the actual average wholesale prices that Providers paid for these drugs further confirms that Plumbers knew the falsity of Generic Drug Manufacturers' misrepresentation.

Accordingly, Plumbers inadequately and implausibly pleads justifiable reliance. It fails to allege that it believed Generic Drug Manufacturers' misrepresentation, a belief it cannot now plausibly claim to have possessed because it knew from the prior AWP Class Actions, that the AWPs were not the actual average wholesale prices of any drugs. Therefore, I will grant Generic Drug Manufacturers' motions to dismiss Plumbers' negligent misrepresentation and UTPCPL claims.[12]

---

average wholesale price (AWP) of a drug . . . (like the sticker price on a car) is a published price that few purchasers actually pay." 35 Pa. Bull. 4727 (Aug. 20, 2005) (internal quotation marks omitted).

[12]     By March 16, 2009, after Plumbers had already agreed to act as a class representative in the New Jersey AWP Class Action and filed a settlement claim in the MDL AWP Class Action, Plumbers knew that the AWPs of drugs were not the actual average wholesale prices that Providers paid. For Plumbers' negligent misrepresentation and UTPCPL claims for any payments made after this date, it cannot succeed because it has not adequately alleged that it believed Generic Drug Manufacturers' misrepresentation, but also because it cannot plausibly allege that it believed the misrepresentation.
     For Plumbers' negligent misrepresentation and UTPCPL claims made on or before March 16, 2009, these claims will be dismissed because Plumbers has not adequately alleged that it believed that the AWPs of Generic Drug Manufacturer's drugs were the actual average wholesale prices Providers paid. Additionally, these claims and all other Pennsylvania Claims for payments made before December 30, 2009 will be dismissed because they are barred by the applicable statutes of limitations.
     Plumbers' Complaint was filed on December 30, 2015. The longest statute of limitations is six years for Plumbers' Pennsylvania UTPCPL claims. This means that a claim may only be timely if it occurred on or after December 30, 2009, unless an exception to the applicable statute of limitations applies. Plumbers contends that three exceptions to the statutes of limitations apply: the discovery rule, the doctrine of fraudulent concealment, and the continuing violations doctrine.
     For any of these exceptions to apply, a plaintiff must exercise reasonable diligence. *Fine v. Checcio*, 870 A.2d 850, 861 (Pa. 2005) ("[T]he standard of reasonable diligence, which is applied to the running of the statute of limitations when tolled under the discovery rule, also should apply when tolling takes place under the doctrine of fraudulent concealment."); *Cowell v. Palmer Twp.*, 263 F.3d 286, 295 (3d Cir. 2001) ("[T]he continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims.").
     The Pennsylvania Supreme Court has explained: "There are [very] few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence." *Fine*, 870 A.2d at 858 (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000)). "Put another way, '[t]he question in any given case is not, what did the plaintiff know of the injury done him? [B]ut, what might he have

### 2. Unjust Enrichment Claim

Generic Drug Manufacturers contend that Plumbers cannot proceed with unjust enrichment claims absent the survival of a traditional tort claim.[13]  Plumbers asserts that a plaintiff may proceed with an unjust enrichment claim absent an underlying tort claim.

To establish a claim for unjust enrichment under Pennsylvania law, a plaintiff must demonstrate that: (1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying for it.  *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999).  Under Pennsylvania law, there are two categories of unjust enrichment claims: (1) In the contract setting, an unjust enrichment claim arises "when plaintiff seeks to recover from defendant for a benefit conferred under an unconsummated or void contract"; (2) "In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)."  *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999).  "As to the first theory, an unjust enrichment claim based on a theory of quasi-contract may be pled as an alternative to a breach of contract claim."  *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493 (E.D. Pa. 2016) (citing *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 n. 5 (Super. Ct. Pa.

---

known, by the use of the means of information within his reach, with the vigilance the law requires of him?'"  *Id.* (quoting *Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co.*, 31 A. 484, 485 (Pa. 1895)).

    Because of the prior AWP Class Actions, Plumbers knew by March 16, 2009 that the AWPs of drugs were not the actual average wholesale prices that Providers paid.  Therefore, it cannot be found to have exercised reasonable diligence in its efforts to learn its injury and cause.  It had six years at most from the date it learned the true nature of AWPs to raise any of these claims and it did not do so. Plumbers did not file its Complaint until December 30, 2015.  Thus, any Pennsylvania Claims for payments made before December 30, 2009 are time-barred.
[13] In the alternative, Generic Drug Manufacturers argue that Plumbers cannot succeed on its unjust enrichment claims because it does not adequately plead the elements of unjust enrichment.  Additionally, Generic Drug Manufacturers argue that the voluntary payment doctrine bars recovery.  There is no need to address these arguments because, as will be discussed below, Plumbers cannot succeed on this claim absent a viable underlying tort claim.

2009).  "With respect to the second theory, an unjust enrichment claim may be pled as a companion, not an alternative, to a claim of unlawful or improper conduct as defined by law—e.g., a tort claim." *Id.*

In the tort setting, there is "no justification for permitting plaintiffs to proceed on their unjust enrichment claim once [it is] determined that the District Court properly dismissed the traditional tort claims." *Steamfitters*, 171 F.3d at 937; *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000) (stating that the "proper reading of *Steamfitters*" is that an unjust enrichment claim based in tort must be dismissed when the traditional tort claims are dismissed).  "[A]n unjust enrichment claim based on wrongful conduct cannot stand alone as a substitute for the failed tort claim." *Whitaker*, 198 F. Supp. 3d at 493.

Plumbers' unjust enrichment claims focus on the same negligent misrepresentations and deceptive conduct that form the basis of its negligent misrepresentation and UTPCPL claims.  Plumbers never responds to Generic Drug Manufacturers' contention that its unjust enrichment claims are based in tort.  Plumbers' failure to respond to this argument is a concession that its unjust enrichment claims arise in the tort setting.  An apt acknowledgement, given that claims for negligent misrepresentation and deceptive conduct under the catch-all provision of the UTPCPL are both characterized as torts.  *See Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 280 (Pa. 2005) (exploring "general principles of tort law" to examine the "common law tort of negligent misrepresentation"); *Christopher v. First Mut. Corp.*, No. 05-0115, 2008 WL 1815300, at *11 (E.D. Pa. Apr. 22, 2008) (explaining that under the catch-all provision of the UTPCPL, "[a] deceptive act is 'the act of intentionally giving a false impression' or 'a tort arising from a false representation made knowingly or recklessly with the intent that another person should detrimentally rely on it'" (quoting *In re Patterson*, 263 B.R. 82, 94 (Bankr. E.D.

Pa. 2001)); *see also Duffy v. Lawyers Title Ins. Co*., 972 F. Supp. 2d 683, 689 n.9 (E.D. Pa.

2013) (same); *Wilson v. Parisi*, 549 F. Supp. 2d 637, 666 (M.D. Pa. 2008) (same).

Because Plumbers' negligent misrepresentation and UTPCPL claims will be dismissed,

Plumbers no longer has a viable underlying tort claim.  Plumbers cannot proceed with standalone

unjust enrichment claims.  Accordingly, I will grant Generic Drug Manufacturers' motion to

dismiss Plumbers' unjust enrichment claims.

### 3. Civil Conspiracy Claim

Generic Drug Manufacturers contend that Plumbers' civil conspiracy claims must be

dismissed due to the dismissal of its other causes of action.[14]

To prove civil conspiracy under Pennsylvania law, a plaintiff must establish the

following elements: "(1) a combination of two or more persons acting with a common purpose to

do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an

overt act done in pursuance of the common purpose; and (3) actual legal damage."  *Gen.*

*Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting

*Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)).  Additionally,

"absent a civil cause of action for a particular act, there can be no cause of action for civil

conspiracy to commit that act."  *Pelagatti v. Cohen*, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987);

*see also Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Servs.*, No. 08-2926, 2010

WL 2470992, at *5 (E.D. Pa. June 14, 2010) (same); *McKeeman v. Corestates Bank, N.A.*, 751

A.2d 655, 660 (Pa. Super. Ct. 2000) (same).

Because Plumbers' underlying Pennsylvania state law claims will be dismissed,

Plumbers' civil conspiracy claims are not viable.  Therefore, I will grant Generic Drug

---

[14] In the alternative, Generic Drug Manufacturers argue that Plumbers insufficiently pleads its civil
conspiracy claims.  There is no need to address this argument because, as will be discussed below,
Plumbers cannot succeed on this claim absent an underlying cause of action.

Manufacturers' motion to dismiss Plumbers' civil conspiracy claims.

### 4. Aiding and Abetting Claim

Generic Drug Manufacturers contend that Plumbers' aiding and abetting claims must be dismissed because of the dismissal of its other causes of action.

Pennsylvania recognizes a claim for civil liability for aiding and abetting a tort pursuant to the Restatement (Second) of Torts § 876. *Skipworth by Williams v. Lead Indus. Ass'n, Inc*., 690 A.2d 169, 174-75 (1997). "Liability for aiding and abetting requires proof of three elements: underlying tortious conduct, knowledge, and substantial assistance." *Jenkins v. Williams*, No. 02-331, 2008 WL 1987268, at *14 (D. Del. May 7, 2008); *see also* Restatement (Second) of Torts § 876. "[T]here can be no claim for aiding and abetting unless plaintiff has also alleged a viable claim for the underlying tort." *Austin v. Hill*, No. 11-2847, 2014 WL 1386338, at *14 (E.D. Pa. Apr. 9, 2014); *see also First United Bank & Tr. v. PNC Fin. Servs. Grp., Inc*., 667 F. Supp. 2d 443, 457 (M.D. Pa. 2009) (dismissing aiding and abetting claim for failure to allege an underlying tort claim).

Because Plumbers' underlying tort claims will be dismissed, Plumbers' aiding and abetting claims are not viable. Therefore, I will grant Generic Drug Manufacturers' motion to dismiss Plumbers' aiding and abetting claims.

### B. Non-Pennsylvania Claims

Plumbers brings claims against Generic Drug Manufacturers for violations of the consumer protection laws of forty-eight additional states and two territories. Generic Drug Manufacturers contend that Plumbers lacks Article III standing to bring these claims. Without any legal reasoning or citation to legal authority, Plumbers "respectfully suggests that the Court defer ruling on the Plaintiff's claims under any state law other than Pennsylvania." Pl.'s Opp'n

45.   Additionally, Plumbers asserts that "it has the right to bring claims under the laws of any

state where its [Plan] [M]embers reside and purchased the generic drugs at issue."  Pl.'s Opp'n

44.

The doctrine of standing is "a constitutional principle that prevents courts of law from

undertaking tasks assigned to the political branches."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

"It is the role of courts to provide relief to claimants, in individual or class actions, who have

suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the

political branches, to shape the institutions of government in such fashion as to comply with the

laws and the Constitution."  *Id.*

> Constitutional standing under Article III requires the following elements:
>
> (1) an injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Winer Family Tr. v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007).  In addition to the "immutable

requirements of Article III," the judiciary also adheres to the prudential principle that "the

Plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to

relief on the legal rights or interests of third parties."  *Miller v. Nissan Motor Acceptance Corp.*,

362 F.3d 209, 221 (3d Cir. 2004) (quoting *Trump Hotels & Casino Resorts, Inc. v. Mirage

Resorts, Inc.*, 140 F.3d 478, 485 (3d Cir. 1998)).  "That a suit may be a class action . . . adds

nothing to the question of standing, for even named plaintiffs who represent a class must allege

and show that they personally have been injured, not that injury has been suffered by other,

unidentified members of the class to which they belong and which they purport to represent."

*Lewis*, 518 U.S. at 357 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26,

40 n.20 (1976)).  "The initial inquiry . . . is whether the lead plaintiff individually has standing, not whether or not other class members have standing."  *Winer*, 503 F.3d at 326.  "A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other member of the class."  *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

"[A] plaintiff who raises multiple causes of action 'must demonstrate standing for each claim he seeks to press.'"  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 245 (3d Cir. 2012) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  "[E]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."  *Griffin*, 823 F.2d at 1483.  "A named plaintiff whose injuries have no causal relation to, or cannot be redressed by, the legal basis for a claim does not have standing to assert that claim."  *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009).

Although Plumbers requests that the Court defer ruling on the issue of standing for Plumber's Non-Pennsylvania Claims, standing is a "threshold inquiry" that should not be deferred.  *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 693-94 (E.D. Pa. 2014); *see also In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 n.20 (E.D. Pa. 2014) (deciding standing of named plaintiffs at the motion to dismiss stage after declining to defer standing analysis); *U.S. ex rel. Krahling v. Merck & Co.*, 44 F. Supp. 3d 581, 601 (E.D. Pa. 2014) (same); *Wellbutrin*, 260 F.R.D. at 155 (same).  To defer ruling on standing would create the exact problem that the standing inquiry seeks to avoid:

> [It] would allow named plaintiffs in a proposed class action, with no injuries in
> relation to the laws of certain states referenced in their complaint, to embark on

24

> lengthy class discovery with respect to injuries in potentially every state in the
> Union. At the conclusion of that discovery, the plaintiffs would apply for class
> certification, proposing to represent the claims of parties whose injuries and
> modes of redress they would not share.

*Wellbutrin*, 260 F.R.D. at 155.  The Court will analyze Plumbers' standing to bring the Non-Pennsylvania Claims at this juncture in the litigation because deferral of the standing analysis would be imprudent.

There is no dispute that Plumbers has standing to bring its Pennsylvania Claims because Plumbers resides in Pennsylvania and alleges that it suffered an injury when it paid too much for Generic Drug Manufacturers' drugs based on their inflated AWPs.  *See, e.g. Krahling*, 44 F. Supp. 3d at 602 (holding that the named plaintiffs have standing in the states where they reside). Generic Drug Manufacturers contend, however, that Plumbers does not have standing to assert any Non-Pennsylvania Claims because it has not suffered an injury in any state other than Pennsylvania.

Courts in this district have repeatedly held, in cases in which named plaintiffs are benefit plans who bring suit regarding their reimbursement of members' purchase of drugs, that plaintiffs lack standing, because they suffered no injury, to raise state law claims for states where they are not located and where they did not purchase any drugs or reimburse their members for the purchase of any drugs.  *See, e.g., Suboxone*, 64 F. Supp. 3d at 692-94; *Niaspan*, 42 F. Supp. 3d at 758-59; *Wellbutrin*, 260 F.R.D. at 157-58.  Conversely, "[c]ase law supports the position that Plaintiffs suffered injury and have standing in states where they purchased a drug or reimbursed their members for purchases of a drug."  *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 533 (E.D. Pa. 2010) (citing *Wellbutrin*, 260 F.R.D. at 156-57); *see also Niaspan*, 42 F. Supp. 3d at 758.  In accordance with these holdings, Plumbers only asserts that "it has the right to bring claims under the laws of any state where its [Plan] [M]embers reside and purchased the

25

generic drugs at issue."  Pl.'s Opp'n 44.

In Count III, Plumbers asserts claims under the consumer protection laws of thirty-seven jurisdictions to which Plumbers pleads no connection and in which Plumbers alleges no injuries.[15]  In its brief, Plumbers makes no attempt to argue that it has standing to bring claims under any of the consumer protection laws of these thirty-seven jurisdictions.  It is incontrovertible that Plumbers lacks standing to bring Count III because "[t]he amended complaint . . . provides no facts on which to find a connection between an alleged injury and some wrongful conduct that would implicate the laws of those states in which [the] plaintiff, or any of [its] reimbursed members, resides."  *Wellbutrin*, 260 F.R.D. at 157.

In Count II, Plumbers asserts claims under the consumer protection laws of the DVHCC Members.  DVHCC resides in Pennsylvania and DVHCC Members reside in California, the District of Columbia, Delaware, Indiana, Kentucky, Maryland, Massachusetts, Michigan, New Jersey, New York, Ohio, Wisconsin, and West Virginia.  Am. Compl. ¶ 468.  Therefore, Plumbers brings claims for violations of the consumer protection laws of each of these states.  Plumbers contends that, in accordance with case law in this district, it has standing to bring these state law claims because DVHCC Members reside in these states.  DVHCC, however, is not a party to this lawsuit, and the Amended Complaint is silent as to any relationship between Plumbers and DVHCC.[16]  Because the Amended Complaint only alleges that Plumbers resides in

---

[15] The thirty-seven jurisdictions are: Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisiana, Maine, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Hampshire, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wyoming.

[16] The Amended Complaint provides no information about DVHCC beyond the states in which DVHCC and DVHCC Members reside.  It does not even explain the DVHCC acronym.  The parties appear to agree that DVHCC stands for the Delaware Valley Health Care Coalition.  Although Plumbers asserts in its brief that it is a member of DVHCC, this assertion does not appear in its Amended Complaint.

Pennsylvania and has Plan Members who reside in Pennsylvania, Plumbers lacks standing to raise claims under the consumer protection laws of any state other than Pennsylvania, including the consumer protection laws of the DVHCC.  Therefore, I will grant Generic Drug Manufacturers' motions to dismiss the Non-Pennsylvania Claims.

## V. CONCLUSION

For the reasons set forth above, I will grant Generic Drug Manufacturers' motions to dismiss.[17]

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:

_____

[17] In order to avoid dismissal, Plumbers requests leave to amend its Amended Complaint.  "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  For all of the reasons discussed above, including Plumbers' knowledge that the AWPs were not the actual average wholesale prices for Generic Drug Manufacturers' drugs, amendment would be futile.  Therefore, I will deny Plumbers' request for leave to amend.